HAVEMAN *v*. KENT COUNTY ROAD COMMISSIONERS.

1. APPEAL AND ERROR—NEW TRIAL—DISAGREEMENT OF JURY—NEGLI-
   GENCE—GOVERNMENTAL IMMUNITY.

   It will be assumed that issue of negligence of defendant county's
   employees will be properly handled, based upon facts and
   testimony produced at new trial, where opinion of trial court
   filed after disagreement of jury indicated motion to dismiss
   would have been denied had not the defense of governmental
   immunity been interposed and been decided adversely to plain-
   tiff minor guest passenger in automobile which was struck by
   defendant's machine engaged in road maintenance work.

2. STATUTES—INCORPORATION OF DEFINITION BY REFERENCE TO AN-
   OTHER STATUTE.

   The definition in a former statute that is adopted by reference
   in a subsequent statute becomes a part of the later statute
   and is unaffected by the subsequent amendment or repeal of
   the earlier act containing the definition.

3. SAME—CONSTRUCTION—ANTECEDENTS.

   It is the general rule of statutory as well as grammatical con-
   struction that a modifying clause is confined to the last anteced-
   ent unless there is something in the subject matter or dominant
   purpose which requires a different interpretation.

4. SAME—CONSTRUCTION—ANTECEDENTS—OWNERS—MOTOR VEHICLES
   —MUNICIPAL CORPORATIONS.

   The phrase "such term" in the sentence "in any civil action
   brought against a political subdivision * * * including all
   municipal corporations, to recover damages resulting from the
   negligent operation by any * * * employee of such political
   subdivision, of a motor vehicle of which said political sub-
   division is owner as *such term* is defined by" a previous act as

---

REFERENCES FOR POINTS IN HEADNOTES

[2] 50 Am Jur, Statutes § 259 *et seq.*
[3, 4] 50 Am Jur, Statutes § 269.
[5] 5A Am Jur, Automobiles and Highway Traffic § 615.

amended, referred to the immediate antecedent "owner," rather than "motor vehicle," since the term "owner" is the last antecedent and the subject matter or dominant legislative purpose does not require a different construction (PA 1945, No 127; PA 1915, No 302, as amended).

5. SAME—DEFINITION OF TERMS.
The mere fact that one term used in a statute is more complex than another is no reason to say a definition of only the more difficult is intended rather than another which itself is capable of various meanings and, therefore, subject to a rigid legal definition.

6. AUTOMOBILES—NEGLIGENCE—LIABILITY BASED ON OWNERSHIP.
Liability for negligent operation of a motor vehicle, based on ownership of the vehicle, requires a precise legal connotation of the term *ownership* (PA 1945, No 127; PA 1915, No 302, as amended; CLS 1956, § 257.37).

7. SAME—OWNER—CONSTRUCTION OF STATUTES—SECONDARY REFERENCE.
The definition of the term "owner" in a later act which referred therefor to an earlier act in order to impose liability for negligent operation of municipally-owned motor vehicles did not by secondary reference confine the definition of the term "motor vehicle" to that term as defined in the earlier act, but left determination of the meaning of such secondary reference to be derived from other sources, such as a yet later act which repealed and replaced the earlier act containing the referenced definition of owner, there being a legislative intent thereby evidenced as to what constitutes a motor vehicle (PA 1915, No. 127; PA 1915, No 302, as amended; CLS 1956, § 257.37).

8. SAME—WAIVER OF GOVERNMENTAL IMMUNITY—STATUTES IN PARI MATERIA.
Statute, enacted in 1949, which repealed a 1915 statute referred to in a 1945 statute imposing liability upon municipalities for negligent operation of vehicles of which they were the owner, and broadened the term "motor vehicle" so as to include a machine used in road maintenance work, should be construed as *in pari materia* for purposes of construing the 1945 act (PA 1945, No 127; PA 1915, No 302, as amended; PA 1949, No 300).

Appeal from Kent; Searl (Fred N.), J. Submitted January 17, 1958. (Docket No. 68, Calendar No. 47,292.) Decided April 13, 1959.

Case by James J. Haveman, Jr., by James J. Haveman, Sr., next friend, against the Board of County Road Commissioners for the County of Kent for personal injuries sustained in collision of automobile and road-maintenance equipment. After disagreement of jury, judgment was entered for defendant. Plaintiff appeals. Reversed and remanded for new trial.

*Warner, Norcross & Judd* (*Harold S. Sawyer* and *J. M. Neath, Jr.,* of counsel), for plaintiff.

*Allaben, Davids & Massie,* for defendant.

Kavanagh, J. On November 21, 1955, plaintiff, by his next friend, filed a declaration in which he alleged that on January 6, 1955, the plaintiff, while riding in an automobile on Michigan highway M-37 in Kent county, just north of the city of Sparta, Michigan, was injured when the automobile was struck by a Duplex Gradall, a road-maintenance machine, owned by the defendant, a political subdivision of this State, and negligently operated by employees of the defendant.

Defendant subsequently filed its answer admitting ownership of the Gradall, but denying the allegations as to negligence. Defendant alleged that at the time and place of the accident it was performing a governmental function and, since the Gradall was not a motor vehicle, defendant was not liable to the plaintiff.

An order denying the defendant's first motion to dismiss was entered. The case was tried before the court and a jury. When plaintiff rested his case defendant moved for a directed verdict of no cause for action. The court reserved its decision under the Empson act. (CL 1948, § 691.691 *et seq.* [Stat Ann and Stat Ann 1957 Cum Supp § 27.1461 *et seq.*])

At the close of the testimony and after defendant had rested defendant again renewed its motion for a directed verdict on the same basis as presented at the close of plaintiff's testimony. Again the court reserved final decision under the Empson act and permitted the case to go to the jury. The jury subsequently returned indicating they saw no chance for reaching a unanimous verdict. The court discharged them from further consideration of the case. Defendant then filed a motion for judgment of no cause for action.* After argument and briefs judgment was entered against the plaintiff following a written opinion by the court. Claim of appeal was made to this Court.

It is plaintiff's contention that on January 6, 1955, James J. Haveman, Jr., a 13-year-old boy, was riding as a guest in the automobile owned and operated by Marie Haveman, his mother. The automobile was being driven south toward Sparta, Michigan. Before reaching Sparta, they came upon a blockade of the west lane, which was the driver's lane. An employee of the defendant was stationed at the blockade with a warning flag. Some 50 feet to the south of the blockade and flagman was defendant's Gradall which was in the process of clearing out a culvert on the west side of the highway. The Gradall was in the west lane of the highway and some 50 feet further to the south there was another flagman and blockade in the west lane. The flagman alternately directed the northbound and southbound traffic around the blockades. Plaintiff contends the flagman stationed north of the Gradall motioned and directed the automobile in which he was riding to proceed south in the east lane. When the automobile reached a point immediately adjacent to the Gradall the Gradall suddenly and without warning

---

* See CL 1948, § 691.701 (Stat Ann § 27.1471).—REPORTER.

pivoted around and struck the side of the automobile. As a result plaintiff was thrown violently forward into the dashboard and windshield of the automobile causing serious injuries.

Defendant contends the mishap occurred at about 1:50 p.m. on a bright, cold winter day; that defendant's bright yellow and red striped Gradall was 28 feet long, 8 feet wide, and 11 feet tall; that the Gradall consists of a crane, powered by a separate motor and operated by a separate driver in a separate cab from that of the truck chassis upon which the unit is permanently mounted. Defendant contends that all other traffic, including buses, tractors, trucks, automobiles, and an ambulance, had passed on the east side of the highway without mishap upon the motion of the flagmen during the day. Defendant further contends that plaintiff's vehicle not only failed to stop as requested by defendant's flagman but that plaintiff's vehicle proceeded around said Gradall at a speed of 45 to 60 miles an hour.

Appellant raises 3 questions:

(1) Is a political subdivision of this State, such as the defendant, immune from liability for the torts of its employees or its agents unless specifically provided otherwise by statute?

(2) Assuming the principle of general immunity applicable, is the defendant liable for the negligent acts of its employees while operating the defendant's Gradall on and along a public highway?

(3) Do the facts adduced at the trial and controverted by the pleadings present a jury issue regarding the negligence of the defendant's employees?

We will dispose of these in inverse order.

The trial court in the first instance submitted the question to the jury and indicated in its opinion that if it were not for the immunity question it would deny the motion to dismiss and set the case for re-

trial. Therefore, we cannot assume that in the event there is a new trial the trial court would not properly handle the question based upon the facts and testimony produced in the subsequent hearing.

The legislature in 1945 adopted Act No 127 (CL 1948, § 691.151 *et seq.* [Stat Ann 1952 Rev § 9.1708 (1) *et seq.*]). Plaintiff relies upon this statute. Section 1 of the statute reads as follows:

"In any civil action brought against a political subdivision of the State of Michigan, including all municipal corporations, to recover damages resulting from the negligent operation by any officer, agent or employee of such political subdivision, of a motor vehicle of which said political subdivision is owner as such term is defined by PA 1915, No 302, as amended, the fact that such political subdivision was in the ownership of such vehicle engaged in a governmental function shall not be a defense to such action."

Plaintiff's injuries in this case occurred in a collision between the passenger automobile in which he was riding and the "boom" of defendant's Gradall. This Gradall is a piece of the road commission equipment used by the defendant in its maintenance work. It consists of a truck having a 4-cylinder, 70-horsepower motor. Mounted upon the truck bed is a crane or boom with a turntable swing. Upon one end of this boom is a shovel or bucket. The entire Gradall is a complete unit in that all parts of the equipment are permanently attached to each other. The truck is designed to move this equipment under the control of a driver who sits in the truck cab and does the driving over the highways at high rates of speed. In this instance the Gradall was standing in one lane of the highway. The crane was being used to clean out a ditch in or adjoining the shoulder of the highway. Plaintiff claims the defendant's employees in operating the crane neg-

ligently caused the boom to swing into the other lane of the highway and to come into contact with the vehicle in which plaintiff was riding.

The sole question is: Did the plaintiff's damages result from the negligent operation of a motor vehicle of which said political subdivision is the owner as such term is defined by PA 1915, No 302 as amended? (CL 1948, § 256.1 [Stat Ann 1947 Cum Supp § 9.1431].)

It is the contention of defendant that the reference clause in the 1945 act refers to the definition of motor vehicle as used in the 1915 act, as amended, rather than referring to the term "owner" as defined in PA 1915, No 302, as amended. It is agreed that as the law stood in 1945 a Gradall was not a motor vehicle in accordance with the definition of PA 1915, No 302, as amended. The trial court agreed with plaintiff that a Gradall would be included within the definition of motor vehicle in the 1949 vehicle code. (CLS 1956, § 257.1 *et seq.* [Stat Ann 1952 Rev § 9.1801 *et seq.*].)

(1) Does the reference clause to the 1915 act, as amended, contained in the 1945 act refer to the definition of the term "owner" or the term "motor vehicle" as defined in the prior act?

(2) Because the term "motor vehicle" is found in the referenced definition of the term "owner" in the 1915 act, does the 1945 act, by a secondary implied reference, adopt the 1915 act definition of "motor vehicle?"

(3) If the 1945 act reference is to the definition of "owner," rather than "motor vehicle" may the legal meaning of the latter term be derived from the definition of such term in the 1949 act which repealed the 1915 act?

As to the first question presented, only 2 possibilities exist. Either the reference is to "motor vehicle" or to "owner." No other alternatives remain.

The determination involves the problem of statutory construction and interpretation.

Under one alternative the problem is quickly settled. If such reference is construed to apply to the term "motor vehicle" one need go no further. Under such construction the law is clear. It is an established rule that when one statute adopts by reference a definition in a former statute such definition becomes a part of the later statute and is not affected by the subsequent amendment or repeal of the earlier act containing the definition. *People* v. *Malsch,* 119 Mich 112 (75 Am St Rep 381); *Wayne County Prosecuting Attorney, ex rel. Taxpayers,* v. *City of Highland Park,* 317 Mich 220.

The second possibility is to construe the reference clause to refer to the term "owner" rather than to "motor vehicle." Under this interpretation other questions arise which must be answered subsequently. The primary question at this point is whether such construction is plausible and logical.

We first go to the case of *Kales* v. *City of Oak Park,* 315 Mich 266, 271, where the Court said in quoting from *Hopkins* v. *Hopkins,* 287 Mass 542, 547 (192 NE 145, 95 ALR 1286):

" 'It is the general rule of statutory as well as grammatical construction that a modifying clause is confined to the last antecedent unless there is something in the subject matter or dominant purpose which requires a different interpretation.' "

The pertinent section of the 1945 act is as follows:

"of a motor vehicle of which said political subdivision is owner as such term is defined by PA 1915, No 302, as amended."

From this quotation it is clear the term "owner" is the last antecedent rather than "motor vehicle." Under the general rule of construction it would appear the reference clause refers to the term "owner"

and not "motor vehicle" unless we can find something in the subject matter or dominant legislative purpose requiring a different construction.

What was the purpose of the 1945 act? It was an act aimed at abolishing the defense of governmental function in certain actions and authorizing insurance premium payments to protect political subdivisions of the State and municipal corporations against liability.* Neither the dominant purpose nor subject matter seem to require a reference to "motor vehicle" rather than "owner."

Although it may be said the term "motor vehicle," as defined in the 1915 act, requires a more detailed and complex definition than the term "owner," nevertheless the latter term is also given a precise legal meaning under the 1915 act. The mere fact a term is more complex than another is no reason to say a definition of only the more difficult is intended rather than another which itself is capable of various meanings and, therefore, subject to a rigid legal definition.

We can find nothing either in the wording of the act or by implication in the subject matter or purpose of the statute to compel a reference to "motor vehicle" rather than "owner." Neither do we find upon a reading of the entire statute any such intent. Such being the case it is both logical and practical to so interpret such reference to its immediate antecedent—"owner."

The question in the *Kales Case, supra,* involved the validity of the incorporation of the city of Oak Park as a city of the fifth class under the then existing and applicable provisions of the home-rule act (PA 1909, No 279, as amended [CL 1948, § 117.1 *et seq.* (Stat Ann 1949 Rev § 5.2071 *et seq.*)]). Section 7 of such act read, in part, as follows:

---

* CL 1948, § 691.152 (Stat Ann 1952 Rev § 9.1708[2]).—REPORTER.

"Provided further, That any incorporated village having a population of more than 750 and less than 2,000 inhabitants, or any territory containing a population of more than 750 and less than 2,000 inhabitants and an average of not less than 500 inhabitants per square mile may incorporate under the provisions of this act as cities of the fifth class." CL 1948, § 117.7 (Stat Ann 1949 Rev § 5.2096).

The question involved the construction of the clause "and an average of not less than 500 inhabitants per square mile." Did this clause refer to "any incorporated village" or solely to "any territory?" The Court, speaking through Justice CARR, held the density requirement applicable solely to territory not previously incorporated. The Court based its decision both on the general form in which the proviso was expressed and, also, on its punctuation.

The case at bar does not give us the benefit of such punctuation to adequately express the intent of the legislature in reference to the proper construction of the referral clause in the 1945 act. Thus, this Court must arrive at its interpretation without the helping hand of precise punctuation.

The fact that the clause in the instant case refers to another statute for the definition of its modified noun while the clause in the *Kales Case, supra,* contained no such outside reference seems unimportant. The cases are only distinguishable primarily on the basis of a clearer and more adequate punctuation in the *Kales Case* and a better expression of legislative intent.

A somewhat analogous question arose in the case of *City of Traverse City* v. *Township of Blair,* 190 Mich 313 (Ann Cas 1918E, 81), where another provision of the city home-rule act was interpreted. The disputed construction involved the following

part of section 4(i) of PA 1913, No 5, as amended,* which authorized cities to incur indebtedness, among other things:

" 'For the purchase or condemnation of the franchises, if any exist, and of property used in the operation of companies or individuals engaged in the plank road, cemetery, hospital, almshouse, electric light, gas, heat, water and power business, and in cities having not less than 25,000 inhabitants the purchase of the franchise, if any, and the property of street railway and tram railway companies; State and county taxes shall be paid upon such transportation property so purchased and owned by any such city; also local taxes on any portion of such property lying outside of city limits the same as would be paid by private corporations.' "

In construing whether the clause "such property lying outside of city limits" was intended to and did include all the property enumerated or merely transportation property the Court said (pp 323, 324) that following "the unquestioned rule of grammar, which has been crystallized into a legal maxim, that relative words must ordinarily be referred to the next antecedent where the intent, upon the whole instrument, does not appear to the contrary, we think the conclusion is unavoidable that the word 'such' in the connection used refers only to transportation property to the exclusion of that more remotely mentioned." In reaching its opinion the Court relied on the construction of the word "such" as used in this connection and, also, the intent of the legislature as expressed by other amendments to the statute.

In returning to the construction of the referral clause in the instant case one cannot say that a reference to "owner" rather than "motor vehicle" is

* For the provision currently in effect as changed substantially to its present form by PA 1915, No 210, see CLS 1956, § 117f, subd (1) (Stat Ann 1957 Cum Supp § 5.2079, subd [1]).

senseless or implausible. One cannot say such term has a standard definition and is therefore not subject to various legal meanings. The reference clause refers to the definition in the 1915 act, as amended. How does the legal definition of "owner" from its definition in the 1915 act as amended compare with the present definition contained in the 1949 vehicle code?

Under the 1915 act as it stood amended in 1945, the term "owner" was defined as follows:

"The term 'owner' as used in this act shall include any person, firm, association or corporation owning or renting a motor vehicle or having the exclusive use thereof, under a lease or otherwise, for a period greater than 30 days." CL 1948, § 256.1 (Stat Ann 1947 Cum Supp § 9.1431).

Under the 1949 motor vehicle code which repealed the 1915 act the definition is stated:

"Sec. 37. 'Owner' means: (a) Any person, firm, association or corporation renting a motor vehicle or having the exclusive use thereof, under a lease or otherwise, for a period of greater than 30 days.

"(b) A person who holds the legal title of a vehicle or in the event a vehicle is the subject of an agreement for the conditional sale or lease thereof with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee or in the event a mortgagor of a vehicle is entitled to possession, then such conditional vendee or lessee or mortgagor shall be deemed the owner." (CLS 1956, § 257.37 [Stat Ann 1952 Rev § 9.1837].)

Under these definitions the term "owner" is given a precise legal connotation as indeed it must be to adequately and properly determine liability based on ownership. It is entirely possible the legislature intended the reference clause in the 1945 act to

refer to the proper definition of "owner" as contained in the 1915 act, as amended, for the basis of determining ownership of a motor vehicle relative to tort liability.

. The second question which must be answered naturally follows from a determination of the first question. Having held the reference was to "owner" rather than "motor vehicle" we must determine whether in then defining "owner" under the 1915 act, as amended, we must yet look to the definition of "motor vehicle" in that act. As defined in the amended 1915 act an "owner * * * shall include any person * * * owning or renting a motor vehicle". Having such definition are we confined to the 1915 definition of "motor vehicle" or can we look elsewhere for such definition? Whether we may look at the 1949 act is the subject of the third question presented. For the moment we are confined to the issue whether the 1945 act, by a secondary implication, adopts the 1915 definition of motor vehicle in order to properly construe the definition of "owner" from the 1915 act. Does the mere fact the amended 1915 definition of "owner" contains the term "motor vehicle" necessarily adopt in the 1945 act such 1915 concept of "motor vehicle" by a secondary implied reference?

In such a situation the rule expressed by the cases of *People* v. *Malsch,* 119 Mich 112 (75 Am St Rep 381) ; and *Wayne County Prosecuting Attorney, ex rel. Taxpayers,* v. *City of Highland Park,* 317 Mich 220, should seemingly not apply since the reference is not to that particular term but only to another which, by way of definition, includes such former term. Can this be the law stated by these 2 Michigan cases? It appears rather doubtful they could stand for such proposition. If it is said they do not apply in such a case of adoption by reference by secondary, implied reference then we need not look at the 1915

definition of "motor vehicle" to determine the proper meaning of "owner" in the same act, but are free to look elsewhere for such meaning.

The third question follows as a logical consequence of having properly answered the first 2 questions. If we find the reference is to "owner" rather than "motor vehicle" and then we find no necessity to use the 1915 definition of motor vehicle to explain the definition of owner from the 1915 act by employing the fiction of a secondary, implied reference then we are free to determine whether we may look to the 1949 definition of motor vehicle which expressly repealed the 1915 definition. There is no question but that the Gradall in question is not a motor vehicle under the 1915 definition, as amended, but is such in the 1949 act. What compelling reason would prohibit us from using the 1949 definition of the term as applied to owner under the 1915 act in reference to the 1945 act? To our mind none appears. The 1949 repeal of the 1915 act provisions clearly showed the legislative intent as to what constitutes a "motor vehicle." Why should this definition be denied application to the 1945 act? Why can't the 1915 definition of "owner" employ the 1949 definition of "motor vehicle" as to what is meant by an "owner" in the 1945 act. If such can be done—and there appears no compelling reason why it is impossible— then the plaintiff will be entitled to recover. The doctrine of sovereign immunity is fleeting. It seems illogical to uphold it where a reasonable and plausible construction of the legislative act could escape it.

Therefore, in order to arrive at a determination of liability in lifting the veil of immunity in this particular case, we must answer the 3 questions presented in this opinion in the following manner:

(1) The reference in the 1945 act is to "owner" rather than "motor vehicle."

(2) There is no secondary, implied reference to the 1915 definition of "motor vehicle" in explanation of that term as found in the 1915 definition of "owner."

(3) There may be an application of the legal meaning of "motor vehicle" in the 1949 act which repealed the 1915 act.

If these 3 questions are so determined and if the other legal and factual issues may be decided, upon remand, in plaintiff's favor an award for plaintiff may be sustained against the county road commissioners of Kent county.

Although we believe the above answers all the questions involved, we believe this theory is supported by the 1949 codification where we have something more than a subsequent repeal. By the 1949 codification we have something more than "a subsequent repeal" of the terms "motor vehicle" and "owner" employed in the amended act of 1915. We have a simultaneous re-enactment of the same terms in broadened form, thus evidencing intent that the act of 1945 and 1949 be construed together *in pari materia* for the purpose of determining any question of interpretation arising on comparison of one with the other. *MacDonald* v. *Quimby,* 350 Mich 21, 34. Justice BLACK in this case, concurring in reversal, said (p 35):

"These statutes 'must receive such a construction as will render each consistent with the other.'"

We have not answered the question as to whether a political subdivision of this State, such as the defendant, is immune from liability for the torts of its employees or its agents unless specifically provided otherwise by statute. Since the legislature has spoken with reference to the subject matter, we do not feel called upon to do so. We merely mention that a majority of this Court in the case of *Miller* v.

*Manistee County Board of Road Commissioners,*
297 Mich 487 (136 ALR 575), so held, although at
a subsequent date in *Mead* v. *Michigan Public Service Commission,* 303 Mich 168, the Court reversed
the *Miller Case.*

For the reasons above given, we reach the conclusion that the Gradall involved in the instant case is
one that has been included in the waiver provisions
of the 1945 act.

The case is remanded to the circuit court for new
trial. Costs in favor of appellant.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK,
EDWARDS, and VOELKER, JJ., concurred. ·