STATE ex rel. the METROPOLITAN
ST. LOUIS SEWER DISTRICT,
Relator,

v.

The Honorable James L. SANDERS,
Judge, Respondent.

No. 73008.

Supreme Court of Missouri,
En Banc.

April 9, 1991.

Rehearing Denied May 3, 1991.

Alan C. Kohn, Mark J. Bremer, William A. Kohlburn, St. Louis, for relator.

Stephen H. Ringkamp, St. Louis, for respondent.

FERNANDO J. GAITAN, Jr., Special Judge.

This action arises from serious electrical burns sustained by the minor plaintiff, Danila Clauser, on February 25, 1987. As a consequence, a lawsuit was filed. Count I of plaintiffs' petition is for personal injuries sustained by the minor plaintiff. Count II states the claim of her parents for medical expenses in excess of $60,000 incurred on account of those injuries. Relator, Metropolitan St. Louis Sewer District (MSD), sought and received a preliminary order in prohibition prohibiting the respondent from further action in said lawsuit. MSD claims the respondent lacked jurisdiction because sovereign immunity precluded recovery to plaintiffs. The Missouri Court of Appeals, Eastern District, agreed and issued a permanent writ of prohibition. We disagree and quash the preliminary order.

On February 25, 1987, MSD was engaged in clearing a storm sewer located immediately adjacent to and beneath a public street. MSD had its Link Belt 20 ton truck-crane located on the street. The crane on the truck was being operated by extending the boom arm of the crane over the side of the street into the storm sewer in order to remove debris. At the particular time of the incident involving the minor plaintiff, the crane was being used to lift a "bobcat" out of the storm sewer and back on to the street. During the course of this maneuver, the boom arm of the truck-crane made contact with an overhead, high voltage, 7200 volt power line. At that time, the minor plaintiff was talking to one of the MSD employees and was standing with her hand in contact with one of the outriggers on the truck-crane. The contact with the high voltage power line caused a surge of electricity, which electrified the entire truck-crane, travelled through the cable and boom arm of the truck-crane, through the chassis of the truck, and through its outriggers causing serious injuries to the minor plaintiff for which she has undergone extensive plastic surgery and other operations. She has been left with severe disfiguring scars and physical disabilities. MSD filed a motion to dismiss and for summary judgment arguing that § 537.600, RSMo 1986, bars recovery to plaintiffs.

In evaluating all of the issues raised by MSD in this proceeding, it is appropriate to bear in mind the principles of statutory construction enunciated by this Court. "Words used in statutes are to be considered in their plain and ordinary meaning in order to ascertain the intent of the lawmakers." *Donahue v. City of St. Louis*, 758 S.W.2d 50, 52 (Mo. banc 1988) (citations omitted). It is the responsibility of the Court "to ascertain and effectuate the intent of the General Assembly, and in so doing, [the Court should] look first to the language of the statute and the plain and ordinary meaning of the words employed." *Alexander v. State*, 756 S.W.2d 539, 541 (Mo. banc 1988).

In *Bowman v. State*, 763 S.W.2d 161, 164 (Mo.App.1988), it was held that "[i]n enacting § 537.600.1(1), the legislature obviously recognized the need to compensate persons injured by the negligent operation by state employees of motor vehicles and motorized vehicles. No construction may legitimately ignore that purpose."

■ The first issue in this case is whether the MSD truck-crane is a motor vehicle or motorized vehicle within the meaning of § 537.600.1(1). We believe the answer is yes. The answer may be found in the simple and unambiguous language of the statute. That statute, in pertinent part, provides as follows:

[T]he immunity of the public entity from liability and suit for compensatory damages for negligent acts or omissions is hereby expressly waived in the following instances:

(1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment.

In *Jones v. State Highway Commission*, 557 S.W.2d 225 (Mo. banc 1977), this Court abolished the common law doctrine of sovereign immunity. *See Johnson v. Bi–State Dev. Agency*, 793 S.W.2d 864, 866 (Mo. banc 1990); *Donahue v. City of St. Louis*, 758 S.W.2d 50, 50 (Mo. banc 1988). In response to *Jones*, the state legislature enacted legislation reinstating total sovereign immunity with two exceptions: (1) when the action involved governmental operation of motor vehicles or motorized vehicles; or (2) where a dangerous condition existed on government-owned property. *See Donahue*, 758 S.W.2d at 50–51; and § 537.600.1. In interpreting and applying the phrase "motor vehicles or motorized vehicles" as used in § 537.600.1(1), Missouri courts have tended towards a permissive, rather than restrictive, application.

Interpretation of "motor vehicles or motorized vehicles" by the courts has been done within tolerant standards of statutory construction. The Missouri Court of Appeals, Western District, in holding that an injury caused by a trash compactor attached to a truck was within the exception to sovereign immunity stated in § 537.600.1(1), stated:

In our application of this statute, 'every word, clause, sentence and section must be given some meaning.' *Brown Group, Inc. v. Administrative Hearing Commission*, 649 S.W.2d 874, 881 (Mo.1983)

(en banc). Applying this principle, we must conclude that the legislature, by using the term 'motorized vehicles,' intended to include a broader class of vehicles than that covered by the term 'motor vehicles.'

*Bowman v. State*, 763 S.W.2d 161, 163 (1988). Further, in holding that a motor boat is a "motorized vehicle" within § 537.-600.1(1), this Court, while acknowledging that statutes waiving sovereign immunity should be strictly construed, stated that the phrase "motor vehicles or motorized vehicles" should be defined using the plain and ordinary meaning of the words and given "a reasonable interpretation in light of the legislative objective and the true intentions of the framers ... [favoring] a construction that avoids unjust and unreasonable results." *Schneider v. State Div. of Water Safety*, 748 S.W.2d 677, 678 (banc 1988) (citations omitted).

Within the context of these standards of interpretation, the issue is whether injuries caused to plaintiff when a crane boom contacted a high-voltage wire are "injuries directly resulting form the negligent acts or omissions ... arising out of the operation of motor vehicles or motorized vehicles ..." thus providing plaintiff with an exception to sovereign immunity. *Section 537.-600.1(1)*. The vehicle involved in this case was a truck, capable of self-propulsion at highway speeds, to which a crane component was permanently attached. The crane, despite being powered by its own motor, was an inherent part of the truck. It is our opinion that the vehicle in question was a single, integrated unit and any attempt to compartmentalize this unit will lead to an unjust and unreasonable application of the statute.

■ In order for the statutory exception in § 537.600.1(1) to apply, two factors must be shown: (1) that the truck-crane unit is at least a "motorized vehicle," a broader classification than "motor vehicle"; *see Bowman*, 763 S.W.2d at 163; and (2) that the injury resulted from "operation" of the motorized vehicle.

In interpreting "motorized vehicle," this Court in *Schneider* adopted the Webster's

Third New International Dictionary definition of vehicle as " 'a means of carrying or transporting something ... a carrier of goods or passengers.' " 748 S.W.2d at 678. Clearly, the truck-crane meets this definition. Other jurisdictions have come to similar conclusions. *See Lemon v. Federal Ins. Co.*, 111 Wis.2d 563, 331 N.W.2d 379 (1983); and *Haveman v. Board of County Rd. Commrs.*, 356 Mich. 11, 96 N.W.2d 153 (1959). In *Haveman*, the Michigan Supreme Court was faced with facts remarkably similar to those in this case. 96 N.W.2d at 154–55. There, the court held that a truck-crane unit was a "motor vehicle" as that term is used in a Michigan sovereign immunity waiver statute. *Id.* at 159. In the *Lemon* case, the Wisconsin Supreme Court held that a tractor equipped with a backhoe and front loader engaged in digging ditches and repairing culverts along the highway was a "motor vehicle" within the terms of the Wisconsin sovereign immunity waiver statute. 331 N.W.2d at 380–81. The Court noted, "[t]o be a vehicle it need not be transporting a person or property at the time of the accident, but only that it be capable of such transportation on a highway." *Id.* at 381.

Both courts in *Haveman* and *Lemon* had a luxury not available to this Court, a statutory definition of "motor vehicle," to interpret and apply. Our legislative, however, chose not to include controlling definitions in § 537.600. Thus, we must rely on court-developed canons of statutory construction, primarily giving effect to the intent of the legislature as it is manifested by the plain and ordinary meaning of the language used and seeking a just, reasonable interpretation and application of the statute. The language in *Haveman* and *Lemon,* though not controlling precedent, at least provides some assurance that defining the truck-crane unit as a "motorized vehicle" is within these canons of interpretation. Accordingly, we hold that the truck-crane unit falls within the broader class of "motorized vehicles" as stated in § 537.600.1(1).

It is necessary, however, to also show that the injury resulted from the "operation" of the motorized vehicle. *Section 537.600.1(1).* In *Bowman v. State,* 763

S.W.2d 161, 163 (Mo.App.1988) (citations omitted), the Missouri Court of Appeals, Western District stated:

'[O]peration of a motor vehicle includes nearly any activity that deals specifically with the motor vehicle, i.e., the actual physical structure and attendant parts of the vehicle....' [O]perating a motor vehicle encompasses 'all acts necessary to be performed in the movement of a motor vehicle from one place to another or fairly incidental to the ordinary course of its operation....'

Having previously held that the truck-crane unit is a single, integrated whole, "operation" of this vehicle would include using its physical structure and attendant parts, such as the crane, to carry out its ordinary purpose. *See Teters v. Kansas City Pub. Serv. Comm'n.,* 300 S.W.2d 511, 517 (Mo.1957) (holding that opening a delivery truck's doors was "operating" a vehicle under § 304.010, RSMo 1949); and *Karnes v. Ace Cab Co.,* 287 S.W.2d 378, 379–80 (Mo.App.1956) (holding that a cab driver who opened the door of his parked vehicle causing injury was "operation" of a motor vehicle within § 304.010, RSMo 1949). It is not necessary that the motorized vehicle be in motion at the time of the injury to find that the injury resulted from "operation" of a motorized vehicle. *See Wells v. Southern Michigan Prison, Dep't. of Corrections,* 79 Mich.App. 166, 261 N.W.2d 245, 246 (1977) (" 'Negligent operation' of a motor vehicle may occur even though the vehicle is standing still as long as it is being used or employed in some specific function or to produce some desired work or effect.").

The accident occurred during operation of the crane, a part of the physical structure of the truck-crane unit and attendant part thereof. Further, the accident occurred while the truck-crane unit was being operated in a manner that was incidental to its ordinary course of operation. We find the Western District's reasoning in *Bowman* persuasive and adopt the definition of "operating" a motorized vehicle stated therein. *See* 763 S.W.2d at 163. Accordingly, we hold that the injury occurred while the truck-crane unit was being "operated" as that term is used in § 537.600.1(1).

MSD argues that the truck-crane was immobile and stationary at the time of this incident. Neither assertion is correct. "Immobile" is defined as "incapable of being moved." Webster's Third New International Dictionary 1130 (3d ed. 1971). The truck-crane was capable of being moved by simply raising the outriggers on the vehicle, starting the engine, and driving it. An automobile does not cease being a motor vehicle because it is parked with its engine off and the gear shift lever in "park." The crane is as much a part of that motorized vehicle as any radio, trunk, hood, or door on an automobile. Furthermore, even the crane itself was not "immobile." In fact, at the time of this incident, the crane was moving while raising a "bobcat" and swinging the cab and boom arm in the direction of the 7200 volt line. "Stationary" is defined as "fixed in a certain station, course or mode: standing still: immobile ... not portable." Webster's Third New International Dictionary 2229 (3d ed. 1971). Obviously, the crane was not stationary using this definition under the facts of this case.

MSD also argues that the Link Belt truck-crane "must be stationary and immobilized in order to operate...." Nothing in the affidavits supports this contention. While the affidavits indicate that the outriggers were extended with the truck wheels off the ground, nothing in the affidavits suggests that the crane could not be operated with the outriggers raised and the wheels in contact with the ground. Nothing in the affidavits suggests that the truck could not be driven while the crane was being operated.

MSD cites a variety of cases from other jurisdictions in support of its argument that the operation of the crane on this truck does not constitute the operation of a motor vehicle. They are *State Farm Mut. Auto. Ins. Co. v. Farmers Ins. Group,* 569 P.2d 1260 (Wyo.1977); *Home Indem. Co. v. Transport Indem. Co.,* 263 Cal.App.2d 100, 69 Cal.Rptr. 504 (1968); *Schmidt v. Luchterhand,* 62 Wis.2d 125, 214 N.W.2d 393 (1974); *Neumann v. Wisconsin Natural Gas Co.,* 27 Wis.2d 410, 134 N.W.2d 474 (1965); *Norton v. Huisman,* 17 Wis.2d 296, 116 N.W.2d 169 (1962); *Smedley v. Milwaukee Auto. Ins. Co.,* 12 Wis.2d 460, 107 N.W.2d 625 (1961). None of these cases are binding on this Court and we choose not to follow this line of authority. None of these cases deal with sovereign immunity. All of these cases involve construction of various automobile insurance policies. Some of these involve construction of the word "automobile." Some of these involve the construction of the term "motor vehicle," as defined in insurance policies as a "four-wheeled vehicle used primarily on highways." None of these cases involve the term "motorized vehicle" as used in § 537.600.1(1). They simply do not apply to, nor assist in, the construction of our Sovereign Immunity Act.

Both criteria stated in § 537.600.1(1) have been fully satisfied. Having reached the aforesaid conclusion, we need not consider whether the truck-crane is a "dangerous condition" as defined in § 537.600.1(2), RSMo 1986. Therefore, the preliminary order in prohibition heretofore issued is ordered quashed.

BLACKMAR, C.J., and ROBERTSON, RENDLEN, HIGGINS, COVINGTON and HOLSTEIN, JJ., concur.

BILLINGS, J., not sitting.