STATE ex rel., Gary KOEHLER and Yavonne Koehler, and Catholic Charities of Kansas City/St. Joseph, Inc., Relators,

v.

Hon. Kenneth R. LEWIS, Judge Circuit Court of Livingston County, 43rd Judicial Circuit Division 1, and Hon. Patrick K. Robb, Judge Circuit Court of Buchanan County, Division 3, Respondent.

Keith W. Ferguson, Amicus Curiae.

No. WD 46678.

Missouri Court of Appeals, Western District.

Nov. 10, 1992.

As Modified Dec. 22, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 22, 1992.

Application to Transfer Denied Jan. 26, 1993.

John F. Burns, Strop, Thomas & Burns, St. Joseph for relators Koehler.

Lynne C. Kaiser, Seigfreid, Bingham, Levy, Selzer & Gee, P.C., Kansas City, for relators Catholic Charities.

Robert B. Paden, Maryville, for respondent The Honorable Kenneth R. Lewis.

Patrick K. Robb, pro se.

Keith W. Ferguson, Brown, Douglas and Brown, St. Joseph, amicus curiae.

Before ULRICH, P.J., and SPINDEN and HANNA, JJ.

ULRICH, Judge.

Gary and Yavonne Koehler, husband and wife, seek this court's writ of prohibition precluding the Honorable Kenneth R. Lewis, Judge, Circuit Court of Livingston County, from enforcing his July 17, 1992, order making Baby O (Baby), born March 3, 1992, in Chillicothe, Livingston County, a ward of the Circuit Court of Livingston County, Juvenile Division. Baby's custody was transferred without prior court approval, and Baby was moved to Lawrence County on March 5. The Honorable Patrick K. Robb, Circuit Court of Buchanan County, Juvenile Division, made Baby a ward of that court on March 10. On March 29, Mr. and Mrs. Koehler, Buchanan County residents, filed their petition for adoption, and Baby was placed with them on March 31 as prospective adoptive parents. This court's preliminary writ in prohibition precluding the Honorable Kenneth R. Lewis from enforcing his July 17, 1992, order was entered August 12, 1992. The issues presented are (1) whether the Livingston County Circuit Court, Juvenile Division, has jurisdiction pursuant to section 453.110.1, RSMo.Supp. 1991 over the person of Baby and the issue of Baby's custody after Baby was moved to Buchanan County and the Circuit Court of Buchanan County, Juvenile Division, made Baby a ward of that court and (2) whether the Livingston County Circuit Court, Juvenile Division, is the proper venue to deter-

mine Baby's legal custody. The Livingston County Circuit Court, Juvenile Division, has jurisdiction over Baby and the issue of Baby's custody, but it is not the proper venue. The preliminary writ in prohibition is made absolute.

Baby was born at a medical facility in Chillicothe on March 3, 1992. On March 4 the natural mother (Mother), a minor, and the natural mother's father signed authorization for Catholic Charities, Diocese of Kansas City–St. Joseph, Inc., (Agency) to remove Baby from the medical facility, to place Baby in a "foster home" approved by Agency and further providing that Baby would be returned to Mother upon Mother's written request. At the same time, Mother signed another form (second form) purporting to waive the necessity for her consent to Baby's adoption; requesting the Buchanan County Circuit Court, Juvenile Division, to make Baby a ward of that court; releasing "all claim and right to said child"; and requesting the court to grant adoption of Baby. The putative father executed a form denying and waiving paternity. The signed forms were retained by Agency. Baby was removed from the medical facility in Livingston County to Buchanan County by Agency's representative and placed in foster care.

On March 10, Mother appeared in the Circuit Court of Buchanan County, Juvenile Division. The second form Mother signed March 4 in Chillicothe was filed with the court. The court made Baby its ward and ordered Baby placed in Agency's care and custody for study and placement for adoption upon approval by the court of the anticipated home study and proposed adoptive home.

On March 17, 1992, the Juvenile Officer of Livingston County filed a petition in the Circuit Court of Livingston County, Juvenile Division, asking that court to take jurisdiction of Baby pursuant to chapter 211, RSMo. The Circuit Court of Livingston County, Juvenile Division, pursuant to the petition filed by the Juvenile Officer, found

Baby to be without proper care, custody or support, in that on March 5, 1992, the natural mother relinquished parental rights and consented to adoption and the natural father executed denial and waiver of paternity while Baby was within Livingston County. The court ordered the Division of Family Services to take Baby into custody pursuant to chapter 211, RSMo.

Gary and Yavonne Koehler filed their petition in the Circuit Court of Buchanan County, Juvenile Division, for the adoption of Baby on March 29, 1992. On March 31, 1992, that court placed the custody of Baby with Mr. and Mrs. Koehler under the supervision of Agency.

On July 17, 1992, the Circuit Court of Livingston County, Juvenile Division, conducted a hearing and entered its order purporting to make Baby a ward of the Court, and, as defined by section 211.021(4), RSMo 1986, placed Baby's legal care, custody and control with the Division of Family Services for placement in an approved foster or adoptive home. The court's order found that Agency and "its St. Joseph Director, ... had personal knowledge of this court's requirements pursuant to section 453.110 RSMo, that no child would be removed from Livingston County, for the purpose of adoption, without an order of this court, and [the director], by his testimony admitted that he and Catholic Charities intentionally violated this court's directive of July 22, 1988." [1] The Court also found that "Catholic Charities charged an adoptive fee of $10,600 to relators (Gary and Yavonne Koehler), which fee did not relate to the actual expenses of the adoption, child care expenses, [and] medical expenses ... but clearly included additional sums generated by Catholic Charities of Kansas City–St. Joseph, Inc."

On August 11, 1992, Gary and Yavonne Koehler filed their petition for writ of prohibition in this court seeking the court's writ commanding the Honorable Kenneth R. Lewis, Judge, Circuit Court of Living-

1. On July 22, 1988, Judge Lewis wrote to the St. Joseph Director of Catholic Charities of Kansas City–St. Joseph, Inc. informing the Director that in Livingston County, "all adoptions [would] be processed through the Division of Family Services." A copy of this letter was introduced during the July 17 hearing in Livingston County.

ston County, Juvenile Division, "to withdraw, set aside, and hold for naught" his order of July 17, 1992. Subsequently, Agency was joined as a party relator pursuant to its motion to intervene, and the Honorable Patrick K. Robb, Judge, Circuit Court of Buchanan County, Juvenile Division, was joined on this court's own motion as a party respondent. Additionally, Keith W. Ferguson, Esquire, Guardian ad Litem in the adoption proceedings pending in Buchanan County, filed his motion to intervene in Baby's behalf. The motion was denied, but Keith W. Ferguson was granted Amicus Curiae status.

Before determining the jurisdictional and venue issues involved in Baby's custody, the legality of Baby's transfer to Agency and subsequent removal from Livingston County must be determined. Section 453.-110, RSMo Supp.1991, provides:

1. No person, agency, organization or institution shall surrender custody of a minor child, or transfer the custody of such a child to another, and no person, agency, organization or institution shall take possession or charge of a minor child so transferred, without first having filed a petition before the circuit court sitting as a juvenile court of the county where the child may be, praying that such surrender or transfer may be made, and having obtained such an order from such court approving or ordering transfer of custody.

2. This section shall not be construed to prohibit the placing of a child in a family home for care by any parent, agency, or organization or institution, if the right to supervise the care of the child and to resume custody thereof is retained. If any such surrender or transfer is made without first obtaining such an order, such court shall, on petition of any public official or interested person, agency, organization or institution, order an investigation and report as described in section 453.070 to be completed by the division of family services and shall make such order as to the custody of such child as may be for the best interests thereof.

3. Any person violating the terms of this section shall be guilty of a class C misdemeanor.

4. The investigation required by subsection 2 of this section shall be initiated by the division of family services within forty-eight hours of the filing of the court order requesting the investigation and report and shall be completed within thirty days. The court shall order the person having custody in violation of the provisions of this section to pay the costs of the investigation and report.

The attorney for the Juvenile Officer of Livingston County, representing the Honorable Kenneth R. Lewis, contends that section 453.110.1 was violated because when Baby was in Livingston County, Agency took possession of Baby without first having filed a petition before the Circuit Court of Livingston County, Juvenile Division, asking that the surrender or transfer of Baby to Agency be made, and without first obtaining an order of the court approving or ordering the transfer of Baby's custody. § 453.110.1. The attorney for Judge Lewis argues that if section 453.110.1 was violated by Baby's removal, the Circuit Court of Livingston County, Juvenile Division, continues to retain jurisdiction over the person of Baby and the issue of Baby's custody.

Agency and the Koehlers respond that Agency did not violate section 453.110.1 by taking possession of Baby on March 5, 1992, because Mother consented in writing to Agency's receiving possession of Baby while retaining her right to obtain Baby's return upon her written request, thereby legitimizing the transfer of Baby's custody. Section 453.110.2 provides that the statute shall not be construed "to prohibit the placing of a child in a family home for care by any parent ... if the right to supervise the care of the child and to resume custody thereof is retained."

Agency, citing section 453.110.2, states that as a state approved and licensed child placement agency (§§ 210.481–.536, RSMo 1986 & Supp.1991), it is authorized to place children in each of the state's counties. If a minor child's legal custodian has tempo-

rarily placed the child with Agency and has retained the right to supervise the child's care and to resume custody of the child, Agency contends that it can legally remove a minor child from one county and place the child for adoption in any other within the state without first obtaining court approval. Thus, Agency argues the legislature intended that licensed child placement agencies and not the circuit courts, juvenile divisions, discern, with the concurrence of the child's legal custodian, where a minor child will be placed for adoption. Agency contends that when the county of placement is selected and the child is removed by the child placement agency to that county for the purpose of adoption, the circuit court, juvenile division, of that county then exercises jurisdiction over the person of the minor child and the adoption proceedings.

■ Application of section 453.110 mandates use of certain principles. A primary role of the courts in construing statutes is to ascertain the legislature's intent from the language used in the statute and, if possible, give effect to that intent. *Abrams v. Ohio Pacific Express*, 819 S.W.2d 338, 340 (Mo. banc 1991). In construing the statutory language, courts look first to the plain and ordinary meaning of the words employed. *State ex rel. Metropolitan St. Louis Sewer Dist. v. Sanders*, 807 S.W.2d 87, 88 (Mo. banc 1991).

■ Section 453.110 manifests the legislature's intent to control the transfer of custody of minors. To effect its intent, the legislature, in clear language, prohibits any person or other entity from surrendering or transferring custody of a minor child and from taking "possession or charge of a minor child" so transferred without first filing a petition before the circuit court of the county "where the child may be" and first obtaining an order from the court approving or ordering the transfer of the minor child's custody. § 453.110.1. In the case of *In re Adoption of Sypolt*, 237 S.W.2d 193 (Mo.1951), the Supreme Court instructed that "where the child may be" means the child's residence. *Id.* at 196. Thus, the legislature intends that the circuit court, juvenile division, of the county

*where the minor child then resides* exercise discretion whether the custody or charge of the minor child will be transferred from one entity to another.

However, the legislature intends to except the provisions of section 453.110.1 when a minor child is to be placed "in a family home for care" provided "the right to supervise the care of the child and to resume custody" of the child is retained by one having lawful custody of the minor child. § 453.110.2. Thus, for example, the legislature intends that parents can temporarily place their children with family members when departing on vacation without first obtaining court authorization. Such statutorily authorized temporary placement of a minor child "in a family home" by parents or others having lawful custody of the minor child further demonstrates the legislative intent of section 453.110.1 to control through the state's circuit courts, juvenile divisions, all other transfers of minor children.

In this case, Mother testified in the July 17 hearing in Livingston County that she always intended that Baby would be placed for adoption. The records of the medical facility in Chillicothe and the testimony of other witnesses corroborate Mother's testimony. When arriving at the medical facility to deliver Baby, Mother immediately indicated to the attending physician that she intended to place her child for adoption. After Baby's birth, Mother declined to see Baby. The attending physician, at Mother's request, contacted Agency, and the day following Baby's birth, Agency's representative visited Mother. Mother then signed a form consent prepared on Agency's letterhead consenting to and approving Agency's removal of Baby from the medical facility and purporting to retain Mother's right to reacquire custody of Baby upon her written request. At the same time, Agency's representative presented a second form application, which Mother signed, purporting to waive the necessity for her consent to Baby's future adoption (§ 453.040(2), RSMo 1986), requesting the Buchanan County Circuit Court, Juvenile Division, to make Baby a ward of that

court and to grant an adoption, and releasing "all claim and right to said child."

Agency removed Baby from Livingston County to Buchanan County where Baby was placed in a foster home. On March 10, Mother appeared before the Circuit Court of Buchanan County, Juvenile Division, and Agency caused the waiver of rights and consent to adopt form signed by Mother in Livingston County on March 4 to be filed in the Buchanan County Circuit Court, Juvenile Division.

The receipt of Baby's custody by Agency is not within the single exception intended by the legislature in section 453.110.2 to the requirement that the custody of minor children be transferred and acquire only with prior court approval. § 453.110.1. Mother always intended to waive her maternal rights and to effect adoption of her child in Buchanan County, and Agency, a licensed child placement agency, always intended to receive the child's custody to facilitate the adoption. Mother did not temporarily place Baby in a "family home" when Agency took Baby. She intended to relinquish her right to "supervise the care" of the child when she authorized Agency to remove Baby from the medical facility in Livingston County. Although Mother signed a form presented by Agency purporting to retain unto herself authority to reacquire custody of Baby upon her written request, the facts demonstrate that Mother intended to permanently divest herself of the custody of Baby when Baby was transferred to Agency on March 5. Agency's acquisition of Mother's signature on the form was a sham perpetrated by Agency to defeat section 435.110.1 and the policy of the Livingston County Circuit Court, Juvenile Division, stated in Judge Lewis's July 22, 1988, letter to Agency, to utilize exclusively the Division of Family Services in all adoption proceedings within Livingston County. The sole purpose of Agency's involvement was to acquire Baby's custody from Mother to effect adoption, Baby's requisite permanent change of custody. Agency then removed Baby to a county where the circuit court, juvenile division, was receptive to it and where Agency could render its services.

Agency's argument that because Mother could have reacquired custody of Baby upon her written request to Agency, Baby's transfer to Agency and Agency's receipt of Baby were within the exception provided in section 435.110.2 is fallacious. That Agency would have returned Baby upon Mother's written request does not alter Mother's intent when Baby's custody was transferred to Agency on March 5, nor does it alter Agency's intent when Baby was received. To hold that a minor child's legal custodian, by signing a form which purports to provide that the minor child will be returned upon written request after change of custody of the child has been effected invokes the exception intended by the legislature in section 453.110.2, without considering the objective intent of the custodian and the recipient of the child's custody at the time of transfer, jeopardizes such child and defeats the legislative intent of section 453.110. Baby's transfer to Agency and Agency's receipt of Baby breached the prohibitions expressed in section 453.-110.

■ The next issue considered is which of the circuit courts has jurisdiction over Baby and the issue of Baby's custody. Baby was removed by Agency to Buchanan County March 5 after Baby's custody was illegally transferred. Agency placed Baby in a foster home located in Buchanan County on the same day in anticipation of adoption, and Baby then became a resident of that county. On March 10 Mother and Agency appeared before the Honorable Patrick K. Robb, Circuit Court of Buchanan County, Juvenile Division, and Agency filed the waiver of parental rights and consent to adopt form signed by Mother in Livingston County on March 4, the day after Baby was born. Mother expressed to the court her desire to waive her parental rights and to consent to Baby's adoption. Baby was made a ward of the court, and on March 29 Mr. and Mrs. Koehler filed their petition to adopt in the Buchanan County court. On March 31 Baby was placed with Mr. and Mrs. Koehler as prospective adoptive parents.

The Circuit Court of Buchanan County, Juvenile Division had jurisdiction over Baby's person and over the adoption procedure initiated in that court on March 5. Section 211.031.1(4), RSMo Supp.1991 directs that the juvenile court of a county shall have exclusive jurisdiction in proceedings for the adoption of a person. Section 453.010, RSMo 1986 provides in part:

1. Any person desiring to adopt another person as his child may petition the juvenile division of the circuit court of the county in which the person seeking to adopt resides, or in which the person sought to be adopted may be, for permission to adopt such person as his child.

Mother appeared before the court on March 10, and expressed her wish to place Baby for adoption. Baby then resided in Buchanan County. There is no evidence that the Circuit Court of Buchanan County, Juvenile Division, knew on March 10 of the illegal transfer of Baby's custody in Livingston County on March 5. The jurisdictional provision in section 453.010 which states that any person desiring to adopt another person "may petition the juvenile division of the circuit court of the county in which the person sought to be adopted may be" was satisfied. § 453.010.1. The court's March 10 order making Baby a ward of the court was a proper exercise of the court's jurisdictional authority. Additionally, the court's March 31 order placing Baby with Mr. and Mrs. Koehler as prospective adoptive parents was a proper exercise of the court's authority. *See Id.*

The Circuit Court of Livingston County, Juvenile Division, also had jurisdiction over Baby and the issue of Baby's custody. Section 453.110.2 provides that "any public official" may petition the appropriate court should a child's custody be transferred in violation of section 453.110.1 and the judge "shall ... order an investigation and report as described in section 453.070 to be completed by the division of family services and shall make such order as to the custody" of the child as may be in its best interest. The intent of the legislature in compelling an investigation when section 453.110.1 is violated is obvious from the remaining text of section 453.110.2. The legislature intends that the facts of the illegal transfer, the child's location and other custodial options regarding the child be elucidated so that a court of competent jurisdiction can determine which child placement option is in the child's best interest. Thus, section 453.110.2 imposed upon Judge Lewis the obligation to order an investigation when the juvenile officer of Livingston County filed his petition alleging the illegal transfer of Baby in that county.

■ Proper venue is now considered. Both the Circuit Court of Livingston County, Juvenile Division, and the Circuit Court of Buchanan County, Juvenile Division, had jurisdiction over Baby and the issue of Baby's custody. The Circuit Court of Buchanan County, Juvenile Division, acquired jurisdiction of Baby and the issue of Baby's custody on March 10 pursuant to section 453.010 before proceedings were initiated on March 17 pursuant to section 453.110 in the Livingston County Circuit Court, Juvenile Division. Thus, the first proceeding to decide Baby's custody was initiated on March 10 in the Buchanan County Circuit Court, Juvenile Division, and that court was then unaware of Baby's illegal custodial transfer on March 5 in Livingston County.

Buchanan County is the proper venue to decide the custody issue. Traditionally, the court first exercising jurisdiction is the court of proper venue. *State ex rel. Coffield v. Buckner*, 198 Mo.App. 230, 200 S.W. 94 (1917). This is so in order to avoid "unseemly clashes of authority between courts of equal dignity and jurisdiction, and would permit one, in the midst of a lawful exercise of jurisdiction first obtained by the other, to step in and overthrow the proceedings thus rightfully instituted and lawfully carried out by the other." 198 Mo. App. at 235–36, 200 S.W. at 96. Therefore, the March 17 order and that portion of the July 17 order of the Circuit Court of Livingston County, Juvenile Division, regulat-

ing Baby's custody are void and without effect.[2]

The preliminary writ in prohibition is made absolute. Additionally, those portions of this court's August 28, 1992, order limiting the jurisdiction of the Honorable Patrick K. Robb and directing the removal of the child from Relators' custody pending this matter are quashed and held for naught.

All concur.

2. Those who would violate section 453.110 are reminded that section 453.110.3 provides a criminal penalty for breach of the statute.