Brenda BOWMAN and Paula Brent,
Plaintiffs–Appellants,

v.

STATE of Missouri and Danny Sides,
Defendants–Respondents.

No. WD 39740.

Missouri Court of Appeals,
Western District.

Nov. 1, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 27, 1988.

Application to Transfer Denied
Feb. 14, 1989.

James F. Koester & Kenneth Koester, St. Louis, James Logan (argued), for plaintiffs-appellants.

Duane Schreimann, Jefferson City, Donald C. Otto, Jr. (argued), for defendants-respondents.

Before NUGENT, P.J., and CLARK and COVINGTON, JJ.

NUGENT, Presiding Judge.

Brenda Bowman and her mother, Paula Brent, appeal from the granting of a motion for summary judgment in favor of defendants State of Missouri and Danny L. Sides.

We reverse in part and affirm in part.

On July 10, 1981, plaintiff Brenda Bowman, a juvenile charge of the state, was assigned to collect trash on the premises of the Division of Youth Services at Babler State Park in Chesterfield, Missouri. She and another young woman, Brenda Savu, were picking up trash, putting it into a trash truck operated by state employee Danny L. Sides and pushing a lever to compact the trash. Without warning, Brenda Savu pushed the lever, and the device crushed the plaintiff's right arm.

By their first amended petition plaintiffs sued the State of Missouri and Danny L. Sides.

In her discovery deposition, Brenda Bowman testified that she and Brenda Savu rode on the back of the truck; Danny Sides drove the truck and another young woman rode in the cab with him. She also testified that they were told to activate the compacting lever before the truck came to a complete stop "to save time." Either girl could activate the compactor; sometimes they gave each other a verbal warning, sometimes not.

After discovery, both defendants filed motions for summary judgment. The court granted the motions, and this appeal followed.

Plaintiffs argue that the trial court erred in granting the state's motion for summary judgment because Brenda Bowman was injured by the operation of the trash truck owned by the state. They also contend that the trial court erred in granting Danny

L. Sides' motion for summary judgment because summary judgment is appropriate only where no genuine issue of material fact exists.

The state asserts that entry of summary judgment was correct in that the plaintiffs failed to plead a cause of action that falls within any exception to the doctrine of sovereign immunity as set out in § 537.600[1], even taking all the petition's allegations as true and construing the evidence in their favor. The state contends that no "motor vehicle" was involved, a public employee did not cause the injury and that "lack of supervision and training" does not fit under the heading "operation of motor vehicles" within the meaning of § 537.600.1(1).

Section 537.600 provides in part as follows:

1. Such sovereign or governmental tort immunity as existed at common law in this State prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect; except that, the immunity of the public entity from liability and suit for compensatory damages for negligent acts or omissions is hereby expressly waived in the following instances:

(1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment. . . .

In their first point, plaintiffs argue that this case falls under subsection 1(1)'s exception to sovereign immunity.

When the legislature enacted the motor vehicle exception, it did so because it recognized the inherent dangerousness of motor vehicles and motorized vehicles and because it knew the state must operate large numbers of such vehicles every day. The fact that this particular vehicle was equipped with a trash compactor and that the compactor caused the injury in no way removes the vehicle from this exception.

1. Sectional references are to the Revised Statutes of Missouri, 1986.

In *Johnson v. Carthell*, 631 S.W.2d 923, 927 (Mo.App.1982), the court, in examining specific case authority, namely, *Teters v. Kansas City Public Service Co.*, 300 S.W. 2d 511 (Mo.1957), and *Karnes v. Ace Cab Co.*, 287 S.W.2d 378 (Mo.App.1956), stated, "These cases demonstrate that the operation of a motor vehicle includes nearly any activity that deals specifically with the motor vehicle, i.e., the actual physical structure and attendant parts of the vehicle."

To determine the meaning of "operation of motor vehicles or motorized vehicles" as used in § 537.600.1(1), the courts have looked to the construction placed upon similar language in § 304.010. In those cases the courts have held that operating a motor vehicle encompasses "all acts necessary to be performed in the movement of a motor vehicle from one place to another or fairly incidental to the ordinary course of its operation...." *Oberkramer v. City of Ellisville*, 650 S.W.2d 286, 296 (Mo.App.1983); *Johnson v. Carthell, supra.* Thus, the question in this case becomes whether the act of operating the trash truck's compactor is "fairly incidental to the ordinary course" of the operation of the instant vehicle, the trash truck.

*Karnes v. Ace Cab Co., supra,* held that the opening of a taxicab door is part of and "fairly incidental" to the operation of the motor vehicle known as a taxicab. Thus, definition of "operation of motor vehicles" permits an inclusion of the different uses of motor vehicles. Otherwise, the *Karnes* court could not have held that the opening of the taxicab door constituted "operation of a motor vehicle" within the meaning of § 304.010.

The Supreme Court in *Teters v. Kansas City Public Service Co.*, 300 S.W.2d 511, 516–17 (Mo.1957), approved *Karnes'* holding and applied it to the operation of a delivery truck. The court held that, although in servicing his customers plaintiff Teters had properly parked his truck at the curb, nevertheless, in opening the truck's doors he "operated" his motor vehicle within the meaning of § 304.010. Therefore, he had to exercise the highest degree of care in swinging the truck's doors outwardly to prevent their coming in contact with or obstructing the path of passing vehicles.

■ The opening of the taxicab door in *Karnes* served the essential purpose of the taxicab; without opening the door the driver could not have served his passengers. The cargo doors of the delivery truck in *Teters* allowed the driver to deliver his cargo. Similarly, the trash compactor in the instant case allows the trash truck to serve its purpose—collecting and removing trash. We conclude, therefore, that the operation of the trash compactor constituted "operation" of a motor vehicle within the meaning of § 537.600.1(1).

Assuming arguendo, however, that the operation of the trash compactor was not operation of a "motor vehicle," its operation was still within the scope of the waiver of sovereign immunity found in § 537.600.1(1). The waiver applies not only to "motor vehicles," but also to "motorized vehicles." In our application of this statute, "every word, clause, sentence and section must be given some meaning." *Brown Group, Inc. v. Administrative Hearing Commission*, 649 S.W.2d 874, 881 (Mo.1983) (en banc). Applying this principle, we must conclude that the legislature, by using the term "motorized vehicles," intended to include a broader class of vehicles than that covered by the term "motor vehicles."

The trash truck in this case is undoubtedly a vehicle. *Cf. Penn v. Columbia Asphalt Co.*, 513 S.W.2d 679, 687 (Mo.App. 1974) (discussing various statutory definitions of vehicles, and finding that a road roller and a spreading machine were motor vehicles). The engine of the trash truck in this case served the dual purposes of propelling the truck along the highway and powering the truck's trash compactor. Whether the operator drove the truck or used the trash compactor, he or she used the truck's engine or motor. We conclude, therefore, that operation of the truck's trash compactor constituted operation of a "motorized vehicle" within the meaning of § 537.600.1(1).

The waiver of sovereign immunity under the statute applies to "[i]njuries directly

resulting from the negligent acts or omissions by public employees...." The state argues that it did not employ Brenda Savu and, therefore, because she pulled the lever that caused Brenda Bowman's injury, it remains immune. The state advances *Johnson v. Carthell, supra,* to support this conclusion.

In *Johnson* the plaintiff sued a school district and its bus driver alleging that the driver held him and let another passenger strike him and then put the plaintiff off the bus and left him injured. The court found that, although the acts had occurred on the bus, they did not constitute part of the "operation" of the bus. Therefore, the driver's acts did not come under the motor vehicle exception.

The state attempts to apply *Johnson* to support the proposition that the truck's only connection with the plaintiff's injury was that the injury occurred while the plaintiff and Brenda Savu rode the truck. The state's reliance on *Johnson* falters in two respects. First, as we have discussed above, the injury in this case, unlike the injury in *Johnson,* came about by the "operation of a motor vehicle or motorized vehicle." Second, the argument erroneously denies Brenda Savu's status as a public employee.

The state argues that we should construe the statute to exclude Ms. Savu's operation of the trash compactor from the scope of "acts or omissions by public employees...." We must strictly construe this statute. *Kanagawa v. State,* 685 S.W.2d 831 (Mo.1985) (en banc). Nevertheless, we must construe it in light of the legislature's purpose in enacting it. *Sermchief v. Gonzales,* 660 S.W.2d 683, 688 (Mo.1983) (en banc); *Benham v. Cox,* 677 S.W.2d 429, 431 (Mo.App.1984). In enacting § 537.600.1(1), the legislature obviously recognized the need to compensate persons injured by the negligent operation by state employees of motor vehicles and motorized vehicles. No construction may legitimately ignore that purpose.

By the enactment of § 537.600.1(1) the state accepted vicarious liability as an employer of persons operating motor vehicles and motorized vehicles. Keeping in mind the compensatory purpose of the statute, we conclude that in searching for the meaning of "public employee" in § 537.600.1(1) we must look to the traditional common law doctrine of vicarious liability, and its attendant definitions of master and servant:

A master is a principal who employs another to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service.

A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right of control by the master.

*Mattan v. Hoover,* 350 Mo. 506, 166 S.W.2d 557, 564 (1942) (quoting Section 2, Restatement of Agency).

■ Here, Brenda Savu performed service for the state by collecting trash. Danny Sides, an employee of the state, exercised actual control over the manner in which she performed her tasks. A jury could properly find that those facts brought her within the common law definition of a servant and subjected her master, the state, to liability for her acts. Therefore, the court improperly granted summary judgment for the state.

Although neither party has addressed the issue, our conclusion that Brenda Savu was a public employee introduces the possibility that Brenda Bowman must also have been an employee of the state and thus limited to remedy under the Workers' Compensation Law, § 287.010—287.855. Because such a conclusion would deprive this court of subject-matter jurisdiction, *see Asberry v. Bannes–Shaughnessy, Inc.,* 734 S.W.2d 250 (Mo.App.1987), we must address the issue sua sponte.

■ The workers' compensation act contains two definitions of "employees." The general definition is in § 287.020.1 and includes those working under a "contract of hire ... or under any appointment or election." Section 287.040 further defines a

"statutory employee" as employees who work for subcontractors under the coverage of a general contractor.

In *Orphant v. St. Louis State Hospital,* 441 S.W.2d 355, 360 (Mo.1969), the court construed the § 287.020 definition to include a hospital volunteer. Concentrating on the "appointment" language, the court concluded that the fact that she received no pay for her work did not preclude her becoming a statutory employee within the meaning of the law. In reaching that conclusion, however, the court noted that "appointment" means placing one in a position of trust. Because the volunteer in her position as a "dance therapist" to mental patients served in a position of trust, the court concluded that she was entitled to compensation for her injuries. *Id.* at 360–61; *see also Yaffe v. St. Louis Children's Hospital,* 648 S.W.2d 549 (Mo.App.1982) (holding an injured hospital volunteer limited to her remedies in workers' compensation); *but compare Sippel v. Custom Craft Tile, Inc.,* 480 S.W.2d 87, 91 (Mo. App.1972) (The term "volunteer employee" would appear to be inherently contradictory).

In the instant case, Brenda Bowman hardly occupied a position of trust. The state held her as its charge under the control of the Division of Youth Services. Nor did the evidence show that she in any way volunteered; the Division assigned her to the trash truck as an incident of her confinement. We conclude that her assignment to the trash detail did not amount to "appointment" sufficient to bring her within the statutory definition of "employee." In addition, no evidence in the record shows that the state compensated her for her services. Therefore, she did not work under a "contract of hire."

The § 287.040 definition of statutory employees includes three elements: (1) work performed pursuant to a contract; (2) an injury incurred on or about the premises of the statutory employer; and (3) work performed in the usual course of the employer's business. *Asberry v. Bannes-Shaughnessy, Inc.,* 734 S.W.2d 250, 252 (Mo.App.1987). The legislature intended by this section to protect workers from financially irresponsible subcontractors and to prevent employers from hiring contract labor to avoid coverage of the workers' compensation law. *Id.*

The provision also provides employers with an affirmative defense against a common law tort action by an injured worker. Proof that a worker is a statutory employee will deprive the court of subject-matter jurisdiction, *id.; Zahn v. Associated Dry Goods Corp.,* 655 S.W.2d 769 (Mo.App. 1983), but the employer has the burden of proving that the injured worker falls within this category. *Greiser v. Western Supplies Co.,* 406 S.W.2d 13 (Mo.1966).

In the instant case, we may assume that the state's business includes trash collecting and that the park would qualify as the premises of the employer. However, no evidence appears in the record of any service contract between the state home and the park department. We conclude, therefore, that Brenda Bowman did not act as a "statutory employee" while working on the state's truck.

This brings us to a paradox: one girl working on a trash truck is an employee while another girl in the same position is not, but like most paradoxes, this only seems self-contradictory. The different purposes of the common law's imposing on the one hand vicarious liability on an employer for the acts of his servant and, on the other hand, of legislation providing a no-fault system of compensation for workers justify this result. (In fact, neither girl was an "employee" for workers' compensation purposes.) The preeminent authority on workers' compensation provides a well-reasoned explanation:

> At common law, it is perfectly possible to strike up a master-servant relation without a contract, so far as vicarious liability is concerned. An infant, a prisoner, a slave, a helpful house guest—all might impose vicarious liability on one who has accepted services performed subject to the master's control.

The reason for the difference between [vicarious liability and workers' compensation] is readily explained by the differ-

ence in the nature of the two liabilities involved. The end product of a vicarious liability case is not an adjustment of rights between employer and employee in the strength of their mutual arrangement, but a unilateral liability of the master to a stranger. The sole concern of the vicarious liability rule, then, is with the master: Did he accept and control the service that led to the stranger's injury? If he did it is of no particular importance between him and the stranger whether the servant enjoyed any reciprocal or contractual rights vis-a-vis the master....

Compensation law, however, is a mutual arrangement between the employer and the employee under which both give up and gain certain things. Since the rights to be adjusted are reciprocal rights between employer and employee, it is not only logical but mandatory to resort to the agreement between them to discover their relationship. To thrust upon a worker an employee status to which he has never consented would not ordinarily harm him in a vicarious liability suit by a stranger against his employer, but it might well deprive him of valuable rights under the compensation act, notably the right to sue his own employer for common-law damages....

There is also sound reason for the requirement that the employment be "for hire." In a vicarious liability suit payment is not a requisite for servant status, since the stranger's rights against the master could not possibly be affected by the presence or absence of financial arrangements between the master and the servant. But in a compensation case, the entire philosophy of the legislation assumes that the worker is in a gainful occupation at the time of injury. The essence of compensation protection is the restoration of part of the loss of wages which are assumed to have existed.

1C A. Larson, *The Law of Workmen's Compensation* § 47.10 at 8–285 to 8–292.

Although the injured party in this case is not a stranger to the employer, neither should she be considered an employee. Because she was, in essence, a prisoner, we can hardly say that she voluntarily entered into a contractual arrangement with the state in which she gave up her rights to recover for her injuries. Brenda Savu, on the other hand, served the state, and it accepted her service and exercised control over her performance. We conclude that under the workers' compensation act Brenda Bowman was not an employee of the state and, therefore, was not limited to a remedy under that law.

In their second point plaintiffs argue that the trial court erred in granting defendant Danny L. Sides' motion for summary judgment.

■ Plaintiffs' amended petition added Danny L. Sides as a defendant. Plaintiffs alleged:

1. That defendant, Sides, carelessly and negligently operated the trash truck mechanism so as to cause the plaintiff to sustain crushing injuries to her arm.

2. That defendant, Sides, carelessly and negligently moved the trash truck dumping mechanism without first looking ahead and [sic] to determine the position and proximity of plaintiff to the mechanism which was being operated by the defendant Sides.

3. Defendant, Sides, carelessly and negligently failed to warn plaintiff that he was about to and did, in fact, move the mechanism of the trash truck.

The record clearly shows that the compactor could be activated only from the outside and back of the truck. Danny L. Sides drove the truck, but all the witnesses agreed that he did not get out of the truck to activate the trash compactor.

Summary judgment was proper as to defendant Sides.

Accordingly, we affirm the judgment as to defendant Danny L. Sides and reverse and remand for trial as to defendant State of Missouri.

All concur.