The ST. LOUIS FLYING CLUB,
a Missouri Association,
Plaintiff–Respondent,

v.

ST. LOUIS COUNTY, Missouri,
Defendant–Appellant.

No. 63340.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 14, 1993.

Donald Jay Cohen, Asst. County Counselor, Clayton, for defendant-appellant.

Charles J. McMullin, St. Louis, for plaintiff-respondent.

STEPHAN, Judge.

St. Louis County, Missouri, appeals a judgment in favor of St. Louis Flying Club, a Missouri Association, for conversion, bailment, and negligence in the amount of $11,058.00.

St. Louis County, Missouri, (St. Louis County), owns and operates a public airport known as Spirit of St. Louis Airport (Spirit Airport). St. Louis Flying Club (Flying Club) is a not-for-profit association organized about fifty years ago to promote aviation and to sponsor educational aviation activities. The Flying Club owns a 1975 Cessna, Model 172 aircraft (aircraft). The Flying Club's aircraft is based at and operated from Spirit Airport. A lease between the Flying Club and St. Louis County allowing the Flying Club to "tie-down" its aircraft at Spirit Airport was in effect at all relevant times.

On May 23, 1989, Spirit Airport's Administrator, Kenneth Nebrig, sent a letter to the Flying Club's president, William Wagner, informing him that because Spirit Airport would be hosting the "1989 V.P. Fair Airshow" the airport had made arrangements to move all aircraft to another location during the fair.

After the aircraft had been moved, Dick Hrabko, Director of Spirit Airport, phoned William Wagner to advise him that during the moving of the Flying Club's aircraft to another location the right wing and the front nosewheel of the aircraft had been damaged. St. Louis County attempted to correct the damage to the aircraft's right wing and front nosewheel. However, the Flying Club contended the aircraft had not been satisfactorily repaired when it later discovered that the aircraft's bulkhead and engine had buckled causing severe damage. The Flying Club also contended that because of the accident the value of the aircraft had been diminished.

Unable to come to an agreement, the Flying Club sued St. Louis County for negligence, bailment, conversion and in equity. A bench trial was held on December 17, 1992. On that day, judgment was rendered in favor of the Flying Club in the amount of $11,058.00 and costs were taxed against St. Louis County. On December 23, 1992, a supplement to the December 17, 1992, order and judgment was issued which states, in part:

> The facts, evidence, and law fully support and prove [Flying Club's] Count I (Negligence), Count II (Bailment), and Count III (Conversion) so that it is ruled that any one of said counts is sufficient to support [Flying Club's] $11,058.00 single award and recovery. It is not necessary for the court to rule on Equity Count IV by reason of [Flying Club's] dismissal thereof without prejudice. Therefore, said judgment of $11,058.00 for [Flying Club] is final for appeal purposes and there is no just reason for delay in the event a party so desires (Rule 74.01).

No findings of facts or conclusions of law were requested and none were made by the trial court.

St. Louis County appeals the judgment in two points. St. Louis County contends the trial court erred in granting judgment in favor of the Flying Club on tort theories of negligence and conversion because St. Louis County is immune from tort liability under the doctrine of sovereign immunity pursuant to Section 537.600 RSMo Supp.1992 and no exception applies to this case. St. Louis County also asserts the trial court erred in granting judgment in favor of the Flying Club on a contract theory of bailment because no written contract in conformity with Section 432.070 RSMo 1986 existed between the Flying Club and St. Louis County. We affirm.

Certain guidelines apply to our review in this case. In a court-tried case, our duty is to sustain the trial court's judgment, if there is substantial evidence to support it, if it is not against the weight of the evidence, and if it is not based on any erroneous declaration or application of the law. *Asher v. Morris,* 687 S.W.2d 627, 628 (Mo.App.1985). Where no findings of fact are requested or made, as here, all fact issues are deemed to be found in accordance with the result reached, and we are to accept as true all evidence, and inferences therefrom, favorable to the prevailing party, and disregard any contradictory testimony. *Id.* Further, the judgment is to be upheld under any reasonable theory of law in accordance with the evidence. *Lohrmann v. Carter,* 657 S.W.2d 372, 377 (Mo.App.1983).

■ St. Louis County contends the trial court erred in granting judgment in favor of the Flying Club on tort theories of negligence and conversion because St. Louis County is immune from tort liability under the doctrine of sovereign immunity pursuant to Section 537.600 RSMo Supp.1992 and no exception applies.

Section 537.600 RSMo Supp.1992 states, in part:

> 1. Such sovereign or governmental tort immunity ... shall remain in full force and effect; except that, the immunity of the public entity from liability and suit for compensatory damages for negligent acts or omissions is hereby expressly waived in the following instances:
>
> (1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment....

St. Louis County contends that the statutory exception to sovereign immunity does not apply because no evidence was presented

at trial that the aircraft was towed by a motorized aircraft tug vehicle.

At trial, the Flying Club presented a letter from Kenneth J. Nebrig, Spirit Airport Administrator, which stated that because the "1989 V.P. Fair Airshow" was to be held at Spirit Airport, he had made arrangements to "move" all aircraft to another location.

William Wagner, President of the Flying Club, testified that Dick Hrabko, Spirit Airport Director, called him after St. Louis County had moved the aircraft to inform him that an accident had occurred. Wagner stated that Hrabko explained to him that there had been a problem "moving your airplane." He further explained there had been some damage to the aircraft. Later that day, Wagner went to view the damage. He met with Nebrig at the aircraft site. Wagner testified that Nebrig told him "we had a little trouble towing ... [t]he tow bar came loose." Wagner stated he asked Nebrig if the driver was driving too fast, to which Nebrig said "probably ... maybe." Attorney for St. Louis County did not object to the introduction of this testimony as hearsay until after Wagner had fully testified to this incident, and thus, the objection was overruled.

Wagner also testified that it was his opinion that damage to the aircraft occurred when the tow truck's tow bar disengaged while the tow, traveling too fast, was moving the aircraft. This testimony was admitted without objection. Further, an expert, Michael Piccirilli, testified it was his opinion that the aircraft was moving at a high rate of speed when it was damaged.

Additionally, in the Flying Club's attorney's opening statement, he stated "an employee of [St. Louis County] used a tug or a tow which is a small vehicle, a four wheel vehicle to tow the aircraft from our location to another location ... and enroute the coupling of the connection or the connection between the tow or the tug and the aircraft separated and the aircraft went into a ditch and turned over on its right side in such a manner that it damaged the wing and this nosewheel...." In an attorney's opening statement for St. Louis County, he stated attorney for Flying Club's opening statement was a "fair representation of the facts in this case." Attorney for St. Louis County also stated in opening statement that "we do not disagree that we did damage to this plane. There is no doubt about it that we damaged the plane." The Flying Club presented evidence that the aircraft was moved from Spirit Airport to another location by a tow truck. This was done under the direction of Kenneth Nebrig, Spirit Airport Administrator, a St. Louis County employee. Further evidence was presented that the tow truck was traveling too fast while moving the aircraft. While enroute the tow truck's tow bar disengaged and an accident resulted which caused damage to the aircraft. We must give due regard to the opportunity of the trial court to judge the credibility of the witnesses. Missouri Rules of Court 73.01(c)(2). We must accept as true all evidence and permissible inferences therefrom favorable to the Flying Club and disregard any contradictory evidence. *Montrose Sav. Bank v. Landers,* 675 S.W.2d 668, 669 (Mo.App.1984).

■ Additionally, "tow truck" clearly falls under the definition of "motorized vehicle" as defined in *Schneider v. State Div. of Water Safety,* 748 S.W.2d 677, 678 (Mo. banc 1988) (defining "motor vehicle or motorized vehicle" for purposes of this statute as "a means of carrying or transporting something ... a carrier of goods or passengers.") *See also Bowman v. State,* 763 S.W.2d 161, 163 (Mo.App.1988) and *State ex rel. Metro. St. Louis v. Sanders,* 807 S.W.2d 87, 89 (Mo. banc 1991). We also note that St. Louis County does not make the contention in its brief that a "motorized aircraft tug vehicle" or "tow truck" is not a "motor vehicle or motorized vehicle" under Section 537.600; only that no evidence supports the finding that a motorized vehicle was used to move the aircraft. The evidence presented by the Flying Club and the inferences therefrom were sufficient to enable the trial judge to correctly find that a tow truck was used by St. Louis County to move the Flying Club's aircraft to another location and while doing so it was damaged and thus determine the motor vehicle exception to sovereign immunity applied. This point is denied.

St. Louis County also asserts the trial court erred in granting judgment in favor of the Flying Club on a contract theory of bailment because no written contract in conformity with Section 432.070 RSMo 1986 existed between the Flying Club and St. Louis County. Applying the guidelines as we have noted above, there is no reason for us to review this point on appeal. The trial court, in its supplemental order, stated "[t]he facts, evidence, and law fully support and prove [Flying Club's] Count I (Negligence), Count II (Bailment), and Count III (Conversion) so that it is ruled *any one of said counts is sufficient to support [Flying Club's] $11,-058.00 single award and recovery....*" (Emphasis ours.)

A review by this court affirming or denying such a point would not render a different judgment in the outcome of this case. The judgment of the lower court states that any of the three submitted counts support the entire award and recovery. St. Louis County does not complain of any error in the two other counts, conversion and negligence, other than that which it complained of in its first point. In fact, St. Louis County states in its brief "if anything, [Flying Club] may have proved (sic) conversion."

We are bound to uphold the judgment on any reasonable theory of law in accordance with the evidence. *Lohrmann*, 657 S.W.2d at 377. The judgment would be affirmed whether we were to deny or affirm this point. Thus, there is no need for us to review this point. Point denied.

Judgment affirmed.

SIMON, P.J., and PUDLOWSKI, J., concur.