Hortense **CAIN**, Respondent,

v.

**MISSOURI HIGHWAYS AND TRANS-PORTATION COMMISSION**, Appellant.

No. SC 88271.

Supreme Court of Missouri,
En Banc.

Dec. 4, 2007.

Zachary T. Cartwright, Jr., Gary J. Holtmeyer, Jr., Richard L. Tiemeyer, Jefferson City, MO, for Appellant.

Peter P. Fiore, Jr., Murray Stone, St. Louis, MO, for Respondent.

MICHAEL A. WOLFF, Judge.

## Introduction

Hortense Cain, an inmate at a state prison, was injured while working on a crew assigned to maintain highway right-of-ways. Following a jury trial of her claim, the circuit court entered judgment awarding her damages for her injuries against the Missouri Highways and Transportation Commission. The commission appeals, contending that as a matter of law Cain is not entitled to judgment and, alternatively, that the verdict directing instruction was incorrect and a portion of Cain's closing argument was improper.

This Court granted transfer after opinion by the Court of Appeals, Eastern District, and has jurisdiction. Mo. Const. art. V, sec. 10. Concluding that the jury instruction was incorrect and prejudicial, the Court reverses and remands for a new trial.

## Factual and Procedural History

In February 2000, Cain—an inmate at the Women's Correctional Center in Vandalia—was a member of a three-person crew assigned to maintain the right-of-way under the supervision and control of the Missouri Department of Transportation.[1] Participation in the MoDOT work-release program was voluntary, and each participant was paid a wage of $7.50 per day. Cain's MoDOT supervisor, John Perkins, assigned Cain and two other inmates, Dana Fitzpatrick and Kristin Korte, to fell a particular tree. He then left the three-person crew unsupervised as he monitored other inmate crews.

While Fitzpatrick and Korte had some experience working with chainsaws, neither had ever felled a tree of this height or diameter. Cain had no experience working with chainsaws. Fitzpatrick was assigned to fell the tree. While she did so, Korte and Cain were told to stay at the base of the tree. The inmates were not permitted to leave their assigned position except to walk to the MoDOT trailer, which contained a portable toilet and drinking water. If an inmate ventured away from her assigned area, she could be charged with escape.

When felled, trees of the size involved here should be "notched" on the side of the tree in which direction the tree is intended to fall. The notch cuts are followed by back cuts intended to weaken the tree at base to facilitate the controlled fall in the desired direction. As Fitzpatrick made her initial "notch" cuts into the tree, the chain slipped off, requiring Fitzpatrick to reposition the chain. When Fitzpatrick was making the back cut, the chain again

---

1. The Missouri Department of Transportation, commonly known as MoDOT, is part of the Missouri Highways and Transportation Commission, the defendant in this case. Section 226.008.3.

slipped off. While she was repositioning the chain the second time, Cain walked from the base of the tree toward the Mo-DOT trailer to use the portable toilet. The tree unexpectedly fell toward the trailer and struck Cain. Cain's major injury was to her knee, which eventually required a total joint replacement.

Fitzpatrick said she had not intended for the tree to fall toward the trailer. Rather, she made the cuts to fell the tree in the direction opposite the trailer. Expert testimony at trial opined that both the notch cuts and the back cut made before the chain fell off the second time may have been too deep. The expert also testified that a tree this size would typically require two minutes to fell by a trained individual. In this case, however, the tree stood for approximately 40 minutes from the time Fitzpatrick made her first cut until the tree fell. Before the tree fell Fitzpatrick had stopped cutting for at least several minutes and was trying to fix the chainsaw.

The commission argued Cain's claim was barred by sovereign immunity. At trial, it moved for directed verdict at the close of Cain's evidence and again at the close of all evidence. Both motions were overruled. The commission also objected to Cain's verdict director, contending that it did not describe a dangerous condition of the commission's property. The jury returned a verdict in favor of Cain, assessed damages at $550,000, and held the commission 75 percent at fault. Accordingly, judgment was entered in favor of Cain for $412,500. On the commission's motion, the court reduced the damages pursuant to section 537.610.2[2] to $305,021. The commission's motions for judgment notwith-

standing the verdict or a new trial were overruled.

## I. Does Sovereign Immunity Entitle the Commission to Judgment as a Matter of Law?

The commission argues that the trial court erred in overruling its motions for directed verdict and motion for judgment notwithstanding the verdict because the commission was protected by sovereign immunity.

The State of Missouri and its entities, including the commission, are protected from lawsuits by sovereign immunity. Section 537.600.1 contains two exceptions. The second of these exceptions is involved in this case.[3] Subdivision (2) states that immunity shall be waived for injuries caused by the condition of a public entity's property if the plaintiff establishes the following elements:

(1) the property was in dangerous condition at the time of the injury,

(2) the injury directly resulted from the dangerous condition,

(3) the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury that was incurred, and

(4) either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition. Section 537.600.1(2).

The question is whether there was evidence to meet all of these statutory elements. The facts show that Cain met her

**2.** All statutory references to RSMo 2000 unless otherwise indicated.

**3.** Subdivision (1), which waives sovereign immunity to injuries arising out of motor vehicle accidents, is not involved here.

burden as to elements (2) and (3). The elements at issue are (1) whether there was a dangerous condition and (4) whether the dangerous condition was created by an employee of a public entity.

## A. Was the State's Property, the Tree, in a Dangerous Condition?

■ The commission argues that Cain failed to demonstrate "a dangerous condition of the property." This Court has explored the meaning of "dangerous condition" in two prior cases. *Kanagawa v. State ex rel. Freeman,* 685 S.W.2d 831, 835 (Mo. banc 1985), held that low fences at a prison, which allowed a rapist to escape and attack the plaintiff, were not defects in the physical condition of the fence. "Dangerous condition," this Court said, "refers to *defects in the physical condition* of the public entity's property." *Id.* (emphasis added).[4]

This Court expanded on the definition of "dangerous condition" in a second case, *Alexander v. State,* 756 S.W.2d 539 (Mo. banc 1988). There, this Court held that the placement of a partition at the bottom of a ladder created a dangerous condition even though there was no physical defect in any of the property. *Id.* at 541–542. The Court explained that the "danger was created not by any intrinsic defect in the property involved, but by the dangerous condition created by the positioning of various items of property." [5] *Id.* at 542. The condition was "dangerous because its existence, without intervention by third parties, posed a physical threat to plaintiff." *Id.*

The commission argues that there was no physical defect in the tree before the crew arrived to fell it. That is true, but under *Alexander,* it has no legal bearing on the issue. In *Alexander,* when the plaintiff climbed the ladder, there was no dangerous condition. Before he descended, someone placed the partition at the bottom of the ladder creating the dangerous condition.

The present case is analogous. When Cain and her crew arrived, the tree was not dangerous. Cain's co-worker stopped cutting twice to fix the chain saw. When the tree fell, the co-worker was not cutting it but was trying to fix the saw with the help of another inmate. The tree was standing for several minutes, after the sawing, before it fell. During this time, a dangerous condition existed: the tree could fall at any moment. This evidence was sufficient for a jury to conclude that the manner in which the inmate worker cut the tree, prior to it falling, created a dangerous condition within the meaning of the statute.[6]

## B. Was the Dangerous Condition Created by an Employee of a Public Entity?

---

4. Although section 537.600 has been amended since *Kanagawa,* the relevant portions of the statute have not been altered.

5. *See also Jones v. St. Louis Housing Authority,* 726 S.W.2d 766, 774 (Mo.App.1987) (Leaving debris on the ground before it was mowed created a dangerous condition that debris would fly out and injure someone); *State ex rel. City of Marston v. Mann,* 921 S.W.2d 100, 102–104 (Mo.App.1996) (Excellent summary of the history of section 537.600.1(2)).

6. The Court need not address the question of whether a tree that falls unexpectedly during

cutting would always constitute a dangerous condition of property. Ordinarily, according to plaintiff's expert, a trained tree cutter would need about two minutes to bring this tree down. The particular facts of this case—the length of time that the tree was standing after being cut—make this a submissible as a condition-of-property case. Here, Cain's co-worker was working on it for 45 minutes prior to the fall, and the tree was standing for several minutes after the last cut before it fell. That makes this case similar to *Alexander v. Missouri,* 756 S.W.2d 539. See MAI 31.17.

The commission argues that Cain fails to meet the statutory exception to sovereign immunity because Fitzpatrick is not an employee of a public entity for purposes of section 537.600.1(2). The statute does not define "employee of a public entity" but the phrase has a commonly understood meaning. An employee is "one employed by another ... usually for wages." *Websters Third New International Dictionary* 743 (1976). A public entity encompasses any state agency. *Stacy v. Truman Medical Center*, 836 S.W.2d 911, 917–921 (Mo. banc 1992).

Fitzpatrick, Cain, and Korte were employees of a public entity because they performed services for the state for which they were paid. *Bowman v. State*, 763 S.W.2d 161, 164 (Mo.App.1988). Specifically, Fitzpatrick cut the tree at the direction of Perkins, the MoDOT supervisor. The other inmates were told to stay at the base of the tree. Perkins, and therefore the commission, controlled the details of how the work was done. Though Fitzpatrick was an inmate of a state correctional institution, she was in this setting performing services for the state and, thus, was an employee of a public entity for purposes of section 537.600.

Since both Cain and Fitzpatrick are employees of a public entity for purposes of section 537.600, it may be questioned why Cain may recover in tort rather than under workers' compensation. Inmate workers are specifically exempt from workers' compensation. Section 287.090.1(3). Since Cain is not covered by the workers' compensation statute, she is not limited to its exclusive remedy provisions.

## C. Does Cain Need to Prove Lack of "Third Party" Intervention?

In addition to the four requirements of the statute, the commission argues there is an additional requirement for the state to waive sovereign immunity: a lack of third party intervention. The commission bases its argument on *Alexander*, where this Court said that the placement of the partition "was dangerous because its existence, *without intervention by third parties*, posed a physical threat to plaintiff." *Alexander*, 756 S.W.2d at 542 (emphasis added).

The language in *Alexander* was not meant to add a fifth element under section 537.600.1(2); rather it was used to contrast *Alexander* from two previous decisions. Those two cases are *Kanagawa* and *Twente v. Ellis Fischel State Cancer Hospital*, 665 S.W.2d 2 (Mo.App.1983). In *Kanagawa*, the plaintiff was attacked by an escaped rapist. The court held there was no dangerous condition when the state allowed the rapist to escape because there was no physical defect in the property. In *Twente*, the plaintiff was raped in a hospital parking lot. Again, the court held that a lack of security in the parking lot was not a dangerous condition because there was no physical defect. The Alexander Court, after eliminating the physical defect requirement, used "intervention by third parties" to distinguish criminal acts by third parties with an indirect connection to state property from negligent acts of state employees.

The commission's argument relies on appellate court decisions that expanded the "third party intervention" language of *Alexander* in a manner that is not consistent with the statute. In *State ex rel. St. Louis State Hospital v. Dowd*, 908 S.W.2d 738 (Mo.App.1995), the plaintiff was a part-time employee who was cleaning out a paper shredder. His boss turned on the shredder causing plaintiff to lose four fingers. The court of appeals held there was no exception to sovereign immunity because the injury was caused by third party

intervention. *Id.* at 741. Similarly in *Farrell v. St. Louis County*, 190 S.W.3d 401 (Mo.App.2006), an inmate was working in the kitchen when another inmate, who was stacking tables, slid a table too fast. The inmate injured his shoulder trying to stop the sliding table. The court of appeals held that the plaintiff did not qualify for the dangerous condition exception because the injury was caused by third party intervention. *Id.* at 403–404. In *State ex rel. Nixon v. Westbrooke*, 143 S.W.3d 737 (Mo. App.2004), the plaintiff was removing debris on a highway following an accident. He was struck by a car when the highway patrol removed the cones that were diverting traffic. The appellate court concluded there could be no recovery because of the intervening acts of the highway patrolmen. Id. at 740.

This expansion of *Alexander's* "third party intervention" language is unfounded. "The language of [section 537.600.1(2)], which refers to conditions created by the negligence of state employees, unquestionably contemplates some negligence by agents of the public entity." *Alexander*, 756 S.W.2d at 542. Much of the confusion has arisen because *Alexander* failed to define who is a "third party." A "third party" is someone whose act intervenes but who is not connected to the state in any kind of employment or agency relationship. Using this definition, the rapists in *Kanagawa* and *Twente* would be considered third party intervenors, while the state employees in *Dowd, Farrell*[7] and *Westbrooke* would not be third parties. To the extent that *Dowd, Farrell,* and *Westbrooke* are inconsistent with this decision and section 537.600.1, they should no longer be followed.

7. The inmate who slid the table was apparently working in the kitchen at the jail. In that

There was no third party intervention in this case. Fitzpatrick, whose actions undoubtedly caused the dangerous condition, was for the purposes here in the employ of the state. Her movements were controlled by the state. She was instructed by her state supervisor as to which tree to cut down, provided with a chainsaw by the state, and paid by the state for her work. For third party intervention to be a factor in this case, a person outside the inmate work crew and MoDOT would have had to have intervened. This did not occur.

## II. Was the Court's Verdict Directing Jury Instruction Correct?

■ The commission objected to Jury Instruction Number 7, the verdict director, which was submitted by Cain. MAI 31.17 is the proper instruction in any case based on section 537.600.1(2). MAI 31.17 reads as follows:

Your verdict must be for plaintiff if you believe

First, *(here describe condition that made the public entity's property dangerous, such as "there was oil on the gymnasium floor" or "the table saw was unguarded")*, and as a result the defendant's *(describe property, such as "gymnasium floor" or "table saw")* was not reasonably safe, and

Second, such condition was created by an employee of *(name of public entity)* within the scope and course of employment, and

Third, the employee was thereby negligent, and

Fourth, as a direct result of such negligence, plaintiff sustained damage.

capacity, he is a public employee.

The commission objected to paragraph First that was submitted by the plaintiff and given to the jury:

"First, the tree was being cut down without training the tree cutters or supervising them or using ropes to control the direction of the fall or clearing the drop zone, and, as a result, the Defendant's cutting down of the tree was not reasonably safe, and . . ."

The remaining three paragraphs of the trial court's instruction correctly track the Second, Third and Fourth paragraphs of MAI 31.17.

The commission properly objected to paragraph First of plaintiff's verdict director because it was an improper modification of MAI 31.17. Paragraph First of MAI 31.17 requires that the instruction describe a dangerous condition that made the public entity's property not reasonably safe. This requirement follows section 537.600.1(2), the sovereign immunity statute, which, as discussed above, requires the submission of a dangerous condition of the public entity's property.

Section 537.600.1(2) would allow a jury to find that the tree, after the notch cuts and back cuts were made, was state property in dangerous condition. *See Alexander,* 756 S.W.2d at 541–542.

The instruction given, Instruction No. 7, did not submit to the jury the question of whether there was a dangerous condition. Instead the instruction submitted to the jury four acts that may have led to the conclusion that the "defendant's cutting down the tree was not reasonably safe." Since the given instruction did not properly follow the approved MAI instruction, it is presumed prejudicial unless the proponent of the instruction proves that no prejudice could have occurred. *Murphy v.*

*Land,* 420 S.W.2d 505, 507 (Mo.1967). Cain has failed to prove that the instruction was not prejudicial as the instruction did not require the jury to find one of the required elements of section 537.600.1(2).

**Conclusion**

Cain presented sufficient evidence to support each of the requirements of section 537.600.1(2). The trial court correctly overruled the commission's motions for directed verdict and judgment notwithstanding the verdict. The verdict directing instruction, Instruction No. 7, however, was incorrect. The instruction was prejudicial because it did not describe the dangerous condition that the jury would have to find under section 537.600.1(2) and MAI 31.17 in order to render a verdict for Cain.

The judgment of the circuit court is reversed, and the cause is remanded.[8]

LAURA DENVIR STITH, C.J., and LIMBAUGH, J., and WOOD, Sp.J., concur.

TEITELMAN, J., concurs in part and dissents in part in separate opinion filed.

PRICE, J., dissents in separate opinion filed.

BRECKENRIDGE, J., concurs in separate opinion of PRICE, J.

RUSSELL, J., not participating.

RICHARD B. TEITELMAN, Judge, concurring in Part and dissenting in Part.

I respectfully dissent from the majority opinion with respect to the analysis of the jury instruction issue. On the remaining issues, I concur.

As the majority points out, the MAI instruction at issue requires a description

8. In light of the Court's granting a new trial because of the jury instruction issue, it is not necessary to reach the commission's point regarding Cain's final argument.

of the dangerous condition that made the public entity's property unsafe. The MAI provides that "oil on the gymnasium floor" and "the table saw was unguarded" are examples of proper descriptions of an alleged dangerous condition. The dangerous condition described in the contested instruction was that "the tree was being cut down...." Just as oil on the gymnasium floor creates a dangerous condition because it may cause someone to slip and fall, the process of cutting down a tree creates a dangerous condition for the simple reason that it might fall on someone. In this case, the dangerous condition that resulted in Ms. Cain's injury was, as the instructions plainly provided, the fact that "the tree was being cut down...."

The majority concludes that the fact that the tree was being cut down does not sufficiently describe the dangerous condition, but indicates that the instruction would pass muster if it had allowed the jury to find that the tree was in a dangerous condition after the notch cuts and back cuts were made. While instructing the jury as to the particular cuts used to fell the tree would be more factually precise, such precision is unnecessary as it serves only to cloud the reality that the dangerous condition in this case was the fact that "the tree was being cut down." Whether the sawyers employed notch cuts or back cuts or any other kind of cut, and regardless of whether these cuts were made correctly or not, the danger to Ms. Cain resulted from the fact that the tree was in the process of being cut down and was, therefore, likely to fall. The jury instructions in this case accurately described the actual dangerous condition, and there is no reasonable probability that the instruction "misdirected, misled, or confused the jury." See, Hein v. Oriental Gardens, Inc., 988 S.W.2d 632, 634 (Mo.App.1999). The judgment should be affirmed.

WILLIAM RAY PRICE, JR., Judge, dissenting.

I dissent. The accident that occurred in this case injuring Cain was the result of the negligence of those individuals involved in cutting down the tree and not the result of any pre-existing dangerous condition of property.

Under section 537.600.1, RSMo 2000, a public entity is entitled to immunity from liability and suit for negligent acts or omissions except when caused by the condition of the public entity's property. It was not until Cain and her fellow inmates began cutting the tree that it became dangerous. This situation is distinguishable from that in *Alexander v. Missouri*, 756 S.W.2d 539 (Mo. banc 1988).

In *Alexander*, a partition had been placed at the bottom of a ladder, which created a dangerous condition; there was no ongoing, intervening activity by another that involved the partition. *Id.* at 541–42. Here, Ms. Fitzpatrick had not terminated her efforts to fell the tree and left the tree in a dangerous condition. Instead, she was in the process of negligently felling the tree and stopped only to repair the chainsaw so that she could continue her efforts.

Our courts have consistently rejected claims like those of Cain's where the condition of the property at issue was not dangerous without the intervening acts of others. *State ex rel. St. Louis State Hospital v. Dowd*, 908 S.W.2d 738 (Mo.App.1995); *Farrell v. St. Louis County*, 190 S.W.3d 401, 404 (Mo.App.2006).

Denial of the Missouri Highways and Transportation Commission's requests for directed verdict and judgment notwithstanding the verdict was error, and the judgment should be reversed.