

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| JEFFERY PINNELL, | ) | No. ED106881 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | Franklin County |
| vs. | ) | 15AB-CC00291 |
| | ) | |
| CITY OF UNION, MISSOURI, | ) | Honorable Gael D. Wood |
| | ) | |
| Respondent. | ) | Filed:  May 14, 2019 |

## OPINION

Jeffery Pinnell appeals the judgment of the Circuit Court of Franklin County that granted the City of Union, Missouri's motion for a directed verdict in this personal injury lawsuit on the grounds that Pinnell failed to make a submissible case for waiver of the City's sovereign immunity under § 537.600.1[1].  Because we find Pinnell adduced substantial evidence that at the time of his fall from the South Oak Street bridge in Union, the City's property was in a dangerous condition precluding the entry of a directed verdict, we reverse and remand.

---

[1] All statutory references are to RSMo 2016.

**Background**

This action arose from the injuries Pinnell sustained on September 9, 2015 when he lost his balance while sitting on the headwall of a short bridge or culvert[2] on South Oak Street, a public roadway in Union, and fell 13 feet down into the creek below. The features of the bridge relevant to this case included north-south traffic lanes, a pedestrian sidewalk separated from the traffic lanes by a curb, and a headwall from which Pinnell fell, located immediately adjacent to the sidewalk. The term "headwall" refers to a curb-like structure approximately 18 to 20 inches high and 18 to 20 inches wide, running parallel to the road surface along the westernmost edge of the bridge.

Pinnell filed a one-count negligence lawsuit against the City alleging that it maintained the bridge with its sidewalk and headwall in a dangerous condition that caused his fall and injuries. Specifically, he averred that where Oak Street passed over the creek, at a height of 13 feet from the creek bed to the bridge surface, the City "maintained a sidewalk for pedestrian use" on the western side of the roadway, "thereby encouraging pedestrian traffic thereupon," even though between the sidewalk and the precipitous drop down to the creek there was only a curb-like structure approximately 18 to 20 inches high—the headwall—which was substantially shorter than the average person's center of gravity. He further alleged that the City, by maintaining such a low headwall, "encourage[d], entice[d], or otherwise invite[d] the public to sit upon" it. As a result, Pinnell claimed, the City failed to "adequately protect" the public from the foreseeable risk of falling over the headwall and into the creek below, and therefore the City's premises were in a dangerous condition.

---

[2] The structure in question was referred to during the lawsuit as a "culvert" and as a "bridge." For ease of understanding, we will use the term "bridge" in this opinion and note that the difference is immaterial for purposes of this appeal.

The City, for its part, claimed that it enjoyed sovereign immunity under § 537.600.1 from Pinnell's lawsuit. During the pretrial phase of the case, the City filed a motion for judgment on the pleadings contending that Pinnell failed to adequately allege a dangerous condition required to bring his lawsuit within the statute's express waiver of sovereign immunity for injuries caused by a dangerous condition on a public entity's property. Specifically, the City argued (1) that Pinnell failed to identify a physical defect in the property at issue and (2) that Pinnell's injuries resulted solely from his misuse of the property.

The trial court denied the City's motion and the case proceeded to trial. There, Pinnell's expert testified that "the general rule of thumb for culverts is if you have . . . sidewalks within 36 inches of the potential fall area you need the railing at . . . 42 inches [in height]." The expert reasoned that the "general engineering theory about why you need a 42-inch high guardrail" is "based on an average person's center of gravity"—that "they're not going to walk up to [the headwall] and trip over it and fall" because "[i]t's going to stop them." He concluded that maintaining a sidewalk next to a 13-foot drop without a 42-inch-high barrier constituted a "dangerous and defective condition."

The City's engineer, testifying as an expert, agreed the consensus standard to be that "42 inches is the minimum barrier necessary to provide reasonable safety for pedestrians in the proximity of fall-offs of more than 30 inches." He testified that anything less would not be "reasonably safe" and would present a "hazard." He also testified it was foreseeable that members of the public would sit on an 18-to-20 inch headwall, and that if the public were permitted to sit on such a headwall with a 13-foot drop on one side, he "would recognize that condition as a danger."

3

Several other witnesses testified that they had seen people sit on the headwall before including children that had been playing in the area and adults smoking cigarettes. And both experts agreed that while the condition of the headwall and adjacent sidewalk had remained the same for more than a decade, nothing prevented the City during that time from raising the height of the headwall or introducing some other barrier to meet minimum safety standards.

At the close of Pinnell's case-in-chief, the City filed its motion for a directed verdict asserting that Pinnell had failed to make a submissible case for waiver of sovereign immunity under § 537.600.1 because, it claimed, he had not presented substantial evidence of a dangerous condition. The City argued again that Pinnell failed to show a physical defect in the premises, and that his injuries resulted solely from his misuse of the property.

Based on each of those arguments, the trial court directed a verdict in favor of the City. Pinnell filed a motion for new trial, which was denied, asserting that he made a submissible case for waiver of the City's sovereign immunity because he presented substantial evidence, such as the above-noted testimony of his expert and the City's engineer, that the City maintained the public property in question in a dangerous and defective condition.

This appeal follows.

### Standard of Review

We review *de novo* the trial court's grant of a directed verdict. *Oyler v. Hy-Vee, Inc.*, 539 S.W.3d 742, 745 (Mo.App.W.D. 2017) (citing *D.R. Sherry Const. Ltd. v. Am. Family Mut. Ins. Co.*, 316 S.W.3d 899, 904 (Mo.banc 2010)). A directed verdict should be granted in a defendant's favor in a tort suit only where the question of liability is not properly put to the jury because the plaintiff has failed to make a submissible case. *See Webb v. Adams*, 527 S.W.3d 121, 124 (Mo.App.E.D. 2017) (citing *Saunders v. Baska*, 397 S.W.3d 44, 47 (Mo.App.W.D. 2013) ("If [the

4

plaintiff] made a submissible case on any cause of action pleaded, then a directed verdict was not proper.")). To make a submissible case, the plaintiff simply has to support each element of its claims with substantial evidence. *Delacroix v. Doncasters, Inc.*, 407 S.W.3d 13, 26 (Mo.App.E.D. 2013) (en banc) (citing *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo.banc 2010)).

Looking to the record, we view the evidence in the light most favorable to the party defending against the motion for a directed verdict—here, Pinnell—and give that party the benefit of all reasonable inferences. *Oyler*, 539 S.W.3d at 745 (citing *Dodson v. Ferrara*, 491 S.W.3d 542, 551 (Mo.banc 2016). Because directing a verdict is a drastic measure, we presume the trial court's action must be reversed unless the facts and inferences from the record are so strongly against the plaintiff as to leave no room for reasonable minds to differ. *Saunders*, 397 S.W.3d at 47. Therefore, we will uphold the trial court's grant of a directed verdict here only if there is *no reasonable basis* to conclude that Pinnell met his threshold burden of making a submissible case.

## Discussion

As a municipal corporation, the City qualifies as a "public entity" generally accorded sovereign immunity under § 537.600 from tort lawsuits. *State ex rel. Bd. of Trs. of City of N. Kansas City Mem'l Hosp. v. Russell*, 843 S.W.2d 353, 358 (Mo.banc 1992). Nevertheless, as provided in § 537.600.1, the City's "immunity . . . from liability and suit for compensatory damages for negligent acts or omissions" is "expressly waived" for

> [i]njuries caused by the condition of a public entity's property if the plaintiff establishes [(1)] that the property was in dangerous condition at the time of the injury, [(2)] that the injury directly resulted from the dangerous condition, [(3)] that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and [(4)] that either [(a)] a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or [(b)] a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

5

*State ex rel. City of Grandview v. Grate*, 490 S.W.3d 368, 370-71 (Mo.banc 2016); *Cain v. Mo. Highways & Transp. Comm'n*, 239 S.W.3d 590, 593 (Mo.banc 2007).

The question in this case is whether Pinnell made a submissible case for waiver—i.e., whether there existed substantial evidence in the record to support each of the four elements set forth by § 537.600.1. We find Pinnell met this burden and therefore the trial court erred by concluding that he failed to establish grounds for waiver of the City's sovereign immunity.

Specifically, we disagree with the trial court that Pinnell failed to present substantial evidence of a *dangerous condition* of the public property at issue. We find that the trial court's error stems from its erroneously narrow interpretation of what constitutes a dangerous condition within the meaning of § 537.600.1. The trial court reasoned that the "dangerous condition" element of the statute can only be satisfied with evidence that the headwall suffered from some purely physical and *intrinsic* defect such as "rotten" or crumbling concrete that gave way causing Pinnell's fall and injuries. The scope of what constitutes a dangerous condition in this context is not nearly so narrow.

In *Cain*, the Missouri Supreme Court addressed how plaintiffs may demonstrate a dangerous condition. 239 S.W.3d at 594. The Court construed its holding in a prior case, *Alexander v. State*, 756 S.W.2d 539, 541-42 (Mo.banc 1988), thusly: "the *placement* of a partition at the bottom of a ladder *created a dangerous condition* even though there was *no physical defect* in any of the property." *Cain*, 239 S.W.3d at 594 (emphasis added). The Court explained that "the danger was created *not* by any *intrinsic* defect in the property involved, but by . . . the *positioning of various items of property.*" *Id.* (citing *Alexander*, 756 S.W.2d at 542) (internal quotation marks omitted) (emphasis added). The condition was dangerous "*because its existence, without intervention by third parties, posed a physical threat* to plaintiff." *Id.* (citing *Alexander*,

6

756 S.W.2d at 542) (emphasis added). Indeed, the Court declared, under *Alexander*, at least, whether there was a physical defect has *"no legal bearing* on the issue" of sovereign immunity. *Id.* (emphasis added).

Based on the foregoing principles from the Supreme Court's *Cain* decision, we find Pinnell met his threshold burden to show a "dangerous condition." There is ample evidence in this record tending to show that (1) the City maintained a sidewalk on the western side of the South Oak Street bridge, 13 feet above an underlying creek, and immediately adjacent to the headwall that ran along the edge of the bridge; (2) the headwall was just 18 to 20 inches above the surface of the sidewalk, which is substantially lower than the average person's center of gravity; and (3) the height of the headwall was such that the City should have anticipated people sitting on it or otherwise coming into close proximity to it in connection with their use of the sidewalk. So, a jury reasonably could have found it was foreseeable that Pinnell might fall from the headwall down into the creek and be injured.

While there may be no evidence of an *intrinsic* physical defect, there is substantial evidence of a dangerous condition. The location of the sidewalk between the roadway and the 13-foot drop with a less-than-two-foot wall to keep pedestrians from tumbling down to the creek below *posed a physical threat or danger to the public,* including Pinnell. So Pinnell did not fail to present substantial evidence that the juxtaposition of the sidewalk, headwall, and 13-foot drop-off constituted a dangerous condition.

Furthermore, the very opinions that the trial court here relied on for its erroneously restrictive interpretation of "dangerous condition" as being limited to intrinsic physical defects only, do not actually support the trial court's interpretation because they use the phrase "physical defect" with a much broader scope. *Necker by Necker v. City of Bridgeton*, 938 S.W.2d 651, 655

7

(Mo.App.E.D. 1997) (citing with approval the *Alexander* Court's observation "that the placement of the partition against the ladder created a *physical deficiency* in the state's property which in turn created a dangerous condition") (emphasis added); *Stevenson v. City of St. Louis Sch. Dist.*, 820 S.W.2d 609, 612 (Mo.App.E.D. 1991) ("The petition must specifically allege a *physical defect. . . . This concept *includes the negligent placement [of]* or failure to remove foreign *objects* from an area *where they create a hazard.*") (emphasis added).

The City further contends the trial court did not err here because *Necker* also states that "[i]ntangible acts such as . . . the lack of warnings and/or signs, the inability to secure an area and the lack of barricades do not create a dangerous condition." 938 S.W.2d at 655. But our Supreme Court has already looked past this statement once, holding unanimously in *Hensley v. Jackson Cty.*, 227 S.W.3d 491, 494-97 (Mo.banc 2007) that the county's failure to repair a downed stop sign created a dangerous condition. Furthermore, here Pinnell went beyond asserting that the City was guilty solely of some omission or "intangible act"—namely, he averred and presented substantial evidence that the City *tangibly created* a dangerous condition. He amply supported his allegation that the City, by "maintaining a sidewalk for pedestrian use upon" the South Oak Street bridge, "encouraged pedestrian traffic thereupon" and thus put the property in such a condition that it posed a threat to the public even when used in a reasonably foreseeable manner.

The City also argues that the trial court properly directed a verdict in its favor based on *Stevenson*'s still-valid insight that public property is not in a dangerous condition just because the plaintiff or some other, non-public actor might misuse it resulting in injury. 820 S.W.2d at 612. But as we just stated, Pinnell presented substantial evidence that the public property at issue was in a dangerous condition *regardless* of how he used it. Given this record, and provided that the question whether the defendant created a dangerous condition is ordinarily a question of fact,

8

*Martin v. Mo. Highway & Transp. Dep't,* 981 S.W.2d 577, 583 (Mo.App.W.D. 1998) (citing *Sheppard v. McFadden Lighting Co.,* 816 S.W.2d 12, 14 (Mo.App.E.D. 1991), we cannot avoid the conclusion that the trial court erred by failing to submit this case to the jury. Pinnell met his burden to demonstrate a dangerous condition under § 537.600.1.

Related to the issue whether there was a dangerous condition, we also find Pinnell sufficiently supported his allegation that his injuries directly resulted from the condition. The test for this causation element is whether "the injury appears to be the reasonable and probable consequence of the act or omission by the defendant." *Id.* at 584. On this record, it appears that if the court had allowed Pinnell's case to be submitted to the jury, it could reasonably have inferred that his falling injuries were the probable consequence of a dangerous condition the City created. Therefore, any alleged misuse should have been an issue for the jury in apportioning comparative fault. *See United Mo. Bank, N.A. v. City of Grandview,* 105 S.W.3d 890, 896 (Mo.App.W.D. 2003) ("The negligence of the defendant need not be the sole cause of the injury, as long as it is one of the efficient causes thereof, without which injury would not have resulted. . . . Ordinarily, causation is an issue that should be left to the trier of fact.").[3]

---

[3] The City also argues for the first time on appeal here that the trial court's actions should be upheld because if there was a dangerous condition in evidence, it was open and obvious *as a matter of law.* To the extent this contention can properly be considered on appeal even though not raised in the trial court, we find that on this record an open-and-obvious defense would at most raise a *factual* dispute for the jury. For Pinnell has presented substantial evidence from which a jury might reasonably conclude that an open-and-obvious defense must fail. The Missouri Supreme Court confirmed in *Harris v. Niehaus,* 857 S.W.2d 222, 226 (Mo.banc 1993) that even where a dangerous condition readily presented itself, the defendant landowner may nevertheless be found liable if it should still have anticipated the sort of harm that resulted. The question is whether "the risk of harm exist[ed] only if the plaintiff fail[ed] to exercise due care." *Id.* at 227. Where, as here, there is substantial evidence that such a risk existed *regardless* of whether Pinnell exercised due care, the open-and-obvious defense is a jury issue. Indeed, in such circumstances, "[a]n invitee's knowledge of an obvious danger is considered in determining the invitee's *comparative negligence* rather than in determining the duty of the owner." *Eide v. Midstate Oil Co.,* 895 S.W.2d 35, 39 (Mo.App.W.D. 1995) (emphasis added).

9

Finally, because Pinnell also made a submissible case on every other element of the "dangerous condition" waiver of sovereign immunity—indeed, the question was little disputed beyond whether Pinnell demonstrated a "dangerous condition" at all—we conclude that the City's motion for a directed verdict should have been denied.

### Conclusion

For the reasons stated above, we reverse and remand for further proceedings consistent with this opinion.

James M. Dowd, Judge

Sherri B. Sullivan, P.J., and
Robin Ransom, J., concur.

10